Victoria BERNACKI, Administratrix of the Estate of Richard Lee Opasik (Estate No. E–8972 Lake Superior Court, Room No. Two, East Chicago, Lake County, Indiana) and Glennie Kirby, natural mother of heir, Rhonda Lee Opasik, Appellants,

v.

## SUPERIOR CONSTRUCTION CO., Thatcher Engineering Corp., Appellees.

### No. 579S121.

Supreme Court of Indiana.

May 4, 1979.

John A. Hovanec and John L. Kelly, Jr., Gary, for appellants.

Larry G. Evans and Karen L. Hughes, Chester, Clifford, Hoeppner & Houran, Valparaiso, for appellees.

## ON PETITION TO TRANSFER

PRENTICE, Justice.

This cause is before us upon the petition of Defendants (Appellees) to transfer it from the Court of Appeals, Second District, that Court, with Judge Buchanan dissenting, having reversed the decision of the Full Industrial Board denying compensation to a posthumous, unacknowledged illegitimate child, whose alleged father (employee) had been killed in a compensable accident. It is the position of Defendants that "The decision of the Court of Appeals erroneously decides a new question of law by declaring unconstitutional the acknowledgment requirement for illegitimate children in the Indiana Workmen's Compensation Acts. Acts 1929, Ch. 172, § 1, p. 536; I.C. 22–3–3–19."

In view of our action herein, other stated grounds for transfer are of no moment.

Transfer is hereby granted, and the Court of Appeals decision and opinion herein are now ordered vacated. (Reference Ind.App., 377 N.E.2d 407).

Under the Workmen's Compensation Act, benefits are payable to dependents who are described in Ind.Code § 22–3–3–18 (Burns 1975) as follows:

"Dependents; listing

"Sec. 19. The following persons are conclusively presumed to be wholly dependent for support upon a deceased employee and shall constitute the class known as presumptive dependents in the preceding section:

    *        *        *        *        *        *

"(d) An unmarried child under eighteen (18) years upon the parent with whom he or she may not be living at the time of the death of such parent, but upon whom, at such time, the laws of the state impose the obligation to support such child.

    *        *        *        *        *        *

"As used in subsections (c), (d), (e) and (f), the term 'child' shall include stepchildren, legally adopted children, posthumous children and *acknowledged illegitimate children*. The term 'parent' shall include stepparents and parents by adoption. * * *." (Our emphasis).

It is the contention of Plaintiff (Appellant), and was so determined by the Court of Appeals that the "acknowledgment" requirement of I.C. 22–3–3–19 (posthumous illegitimate dependents) was unconstitutional, at least under these particular facts. Great reliance was placed on *Weber v. Aetna Casualty & Surety Co.*, (1972) 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768, in which it was held that a somewhat similar Louisiana Workmen's Compensation statute violated the Equal Protection Clause of the Fourteenth Amendment. In the case at bar it was specifically held that it was a denial of Equal Protection under I.C. 22–3–3–18 and I.C. 22–3–3–19 to hold that an "unacknowledged illegitimate" child could not be a "presumptive" dependent of the decedent.

The Full Industrial Board found that decedent is the father of the child, that he and

the child's mother knew each other for approximately four months prior to his death; that they were planning to marry and were scheduled to obtain their marriage license on Saturday of the week in which he was killed; they were not living together nor was he contributing to her support; they had commenced sexual relations about one month prior to his death and had had five separate acts of sexual intercourse; that she was not dating or having sexual relations with anyone else; that she missed her menstrual period which would normally have occurred one or two weeks before his death; that the child was born some eight months after his death. There was no finding (and no evidence to support a finding) as to whether he knew that his fiancee had passed her normal time for menstruation or whether he may have had any reason to suspect that she may have conceived.

The Board "further found that deceased never acknowledged said [child] as his illegitimate child nor was there any act or affirmation or declaration by deceased as to such acknowledgment, and therefore, said [child] does not qualify as a dependent of deceased under the Workmen's Compensation Act since she was not an acknowledged illegitimate child of the decedent."

With reference to *Weber v. Aetna, etc., supra,* the Louisiana statute like Indiana's aforementioned § 22–3–3–19 provides that an illegitimate child is the equivalent of what Indiana law classifies as a presumptive dependent of the father only if he has acknowledged the child. Louisiana, however, requires a formal acknowledgment and denies a married man the right to make it.

The facts in *Weber* are:

On June 22, 1967, Henry Clyde Stokes died in Louisiana of injuries received during the course of his employment the previous day. At the time of his death Stokes resided and maintained a household with one Willie Mae Weber, to whom he was not married. Living in the household were four legitimate minor children, born of the marriage between Stokes and Adlay Jones Stokes who was at the time committed to a mental hospital. Also living in the home was one unacknowledged illegitimate child born of the relationship between Stokes and Willie Mae Weber. A second illegitimate child of Stokes and Weber was born posthumously. (406 U.S. at 165, 92 S.Ct. at 1401).

The Louisiana Supreme Court had affirmed a judgment which had awarded maximum compensation benefits to the four legitimate children and had awarded compensation to the two illegitimate children to the extent benefits were not exhausted by the legitimate children. But since the award to the legitimate children had exhausted the benefits the two illegitimate children received nothing.

In the state courts and before the United States Supreme Court the attorneys for the illegitimate children relied on *Levy v. Louisiana,* (1968) 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed. 436. The State Supreme Court found distinctions by which to hold that *Levy* was not controlling: (1) the *Levy* statute excluded all illegitimates while the compensation statute merely relegates them to a less favorable position; (2) in *Levy* the tort-feasor escaped liability on the fortuity of the potential claimant's illegitimacy whereas full compensation was paid in *Weber.* On those distinctions Mr. Justice Powell for the United States Supreme Court, said:

"We do not think *Levy* can be disposed of by such finely carved distinctions. The Court in *Levy* was not so much concerned with the tortfeasor going free as with the equality of treatment under the statutory recovery scheme. Here, as in *Levy,* there is impermissible discrimination. *An unacknowledged illegitimate child may suffer as much from the loss of a parent as a child born within wedlock or an illegitimate later acknowledged.* [Our emphasis.] So far as this record shows, the dependency and natural affinity of the unacknowledged illegitimate children for their father were as great as those of the four legitimate children whom Louisiana law has allowed to recover. The legitimate children and the illegitimate children all lived in the home of the deceased and were equally dependent upon him for maintenance and support. It is

inappropriate, therefore, for the court below to talk of relegating the unacknowledged illegitimates 'to a less favorable position as are other dependent relatives such as parents.' The unacknowledged illegitimates are *not* a parent or some 'other dependent relative;' in this case they are *dependent children*, and as such are entitled to rights granted other *dependent children*. [Original emphasis.]

"Respondents contend that our recent ruling in *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), controls this case. In *Labine*, the Court upheld, against constitutional objections, Louisiana intestacy laws which had barred an acknowledged illegitimate child from sharing equally with legitimate children in her father's estate. That decision reflected, in major part, the traditional deference to a State's prerogative to regulate the disposition at death of property within its borders. *Id.*, at 538, 91 S.Ct. [1017], at 1020. The Court has long afforded broad scope to state discretion in this area. Yet the substantial state interest in providing for 'the stability of . . . land titles and in the prompt and definitive determination of the valid ownership of property left by decedents,' *Labine v. Vincent*, 229 So.2d 449, 452 (La.App.1969), is absent in the case at hand.

"Moreover, in *Labine* the intestate, unlike deceased in the present action, might easily have modified his daughter's disfavored position. As the Court there remarked: 'Ezra Vincent could have left one-third of his property to his illegitimate daughter had he bothered to follow the simple formalities of executing a will. He could, of course, have legitimated the child by marrying her mother . . . .'

"Such options, however, were not realistically open to Henry Stokes. Under Louisiana law he could not have acknowledged his illegitimate children even had he desired to do so. The burdens of illegitimacy, already weighty, become doubly so when neither parent nor child can legally lighten them." (406 U.S. at 169–171, 92 S.Ct. at 1403.)

I agree with Chief Buchanan, who stated in his dissent to the opinion of the Court of Appeals, that the *Weber* decision is limited and does not mandate that all Workmen's Compensation Acts requiring acknowledgment of illegitimates be invalidated upon equal protection grounds. The distinguishing feature between the *Weber* case and the one before us is that in *Weber* the statutes precluded the deceased workman from acknowledging his illegitimate children. Such is not the case in Indiana.

The question that we must determine is whether or not there is a rational relationship to a legitimate state purpose in those portions of the statute which classified acknowledged and unacknowledged illegitimate children differently. In our judgment, there is a very valid and clear purpose in such classification. Chief Judge Buchanan observed that "Requiring acknowledgement decreases the problem of locating illegitimate children and determining questionable claims of parenthood. One of the purposes of workmen's compensation statutes is to compensate the dependent families of those killed in industrial accidents. In Louisiana, a dependent child living in the home (as was the case in *Weber*) might, because of the father's legal inability to acknowledge him, be given a lesser status in the recovery of workmen's compensation, but it is much less likely that a child similarly situated in Indiana would suffer the same exclusion."

The legitimate state purpose is even more glaring with respect to children born posthumously. It has been urged that, because of the alleged father's untimely death, he had no opportunity to acknowledge the child. We hasten to add that neither did he have an opportunity to deny it. To declare unconstitutional the acknowledgment requirement of the Act would not only create a class of recipients never contemplated by the Legislature, it would open wide the door to posthumous claims of paternity impossible of defense.

The decision of the Full Industrial Board denying compensation is affirmed.

GIVAN, C. J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

The Industrial Board, after hearing, determined in its findings that Richard, the deceased worker, was the father of Rhonda, the child claimant, but denied benefits because Richard had not acknowledged her during his lifetime. In so doing, the Board correctly construed and applied pertinent provisions of the Workmen's Compensation Act defining presumptive dependents. Ind. Code § 22–3–3–19. Since Rhonda was not born in wedlock, she could not qualify for benefits as a "legitimate child" of Richard. She could only hope to qualify for benefits by proving that she came within the category of "acknowledged illegitimate children." According to the interpretation given these statutory provisions by the Board, she could qualify as an "acknowledged illegitimate" child only upon proof of two elements: paternity and acknowledgment. If a child seeking benefits through this category proved only acknowledgment he would not qualify. If a child proved only paternity he would not qualify. In this case, Rhonda successfully made it over the paternity hurdle but was unable to surmount the acknowledgment hurdle.

In order to determine whether this requirement that illegitimate children prove acknowledgment is discriminatory in violation of the Equal Protection Clause, we are mandated to use the intermediate scrutiny test set down in *Weber v. Aetna Casualty & Surety Co.*, (1972) 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768. The classification of illegitimate children claimants upon the basis of whether they have been acknowledged or not, must bear some rational relationship to a legitimate state purpose and:

"The essential inquiry . . . is . . a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?"

I agree with Judge White's statement of the purpose of the Workmen's Compensation Act as being in part to compensate children for their ". . . loss of support, actual or legally required, resulting from the death of a parent in an industrial accident."

The majority has concluded that the state interest in requiring acknowledgment is to DECREASE TWO PROBLEMS: (1) locating illegitimate children, and (2) determining questionable claims of parenthood. One could speculate endlessly over what is meant by these "problems," and what is meant by a decrease of them; however, I choose to regard the majority's statement as meaning that the state has an important interest in maintaining a fair and effective process of determining if a child claimant is in fact the illegitimate child of a deceased worker. After so doing, one must question how the acknowledgment requirement in the statute promotes the fairness and effectiveness of this process of posthumously determining paternity. It cannot be doubted that it will limit the scope of the search for illegitimate children and give maximum protection to the employer and his agents against the payment of false and fraudulent illegitimacy claims. But, at the same time, it does so by excluding a large segment of the class of all illegitimate children, i. e., those upon whom their father did not bestow an acknowledgment. This requirement will prove an insurmountable barrier, not only to claimants such as Rhonda, whose father died without even knowing her mother was pregnant, but to all those other potential claimants whose fathers did not choose, for whatever reason, to acknowledge them. It has been stated that a statute such as this must be "carefully tuned to alternative considerations." *Mathews v. Lucas*, (1976) 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651. *See also Trimble v. Gordon*, (1977) 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31.

The reach of the acknowledgment requirement extends far beyond what is necessary to provide the employer and his agents with a fair and equitable posthumous determination of illegitimacy, and thereby discriminates against the sub-class of unacknowledged, illegitimate children, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. As the law stands now

acknowledgment stands as an insurmountable barrier to the qualification of many dependent illegitimate children who have suffered loss of support through the death of a parent by industrial accident. This statute needs to be retuned. The General Assembly must develop and enact different means for protecting employers and their agents from specious claims.