S.M.V., Mother and Natural Guardian of L.D.V., Petitioner-Appellant,

v.

Ruth E. LITTLEPAGE, Personal Representative of the Estate of Randy D. Bonham, Respondent-Appellee.

No. 1-880A205.

Court of Appeals of Indiana, First District.

Dec. 21, 1982.

Rehearing Denied Jan. 18, 1983.

---

**2.** Tully and AIMS do not attack the specific amount awarded by the trial court.

John A. Hamilton, Bunner, John & Heathcotte, Evansville, for petitioner-appellant.

Richard W. Yarling, John W. Hammel, Yarling, Tunnell, Robinson & Lamb, Indianapolis, for amicus curiae.

NEAL, Judge.

## STATEMENT OF THE CASE

This is an appeal by petitioner-appellant S.M.V., mother and natural guardian of L.D.V., from an adverse summary judgment on her petition seeking a distributive share of proceeds from the settlement of a wrongful death suit brought by Ruth E. Littlepage (Littlepage), Personal Representative of the Estate of Randy D. Bonham (Bonham), deceased.

We affirm.

## STATEMENT OF THE FACTS

The appeal comes to us from the trial court's action granting Littlepage's motion for summary judgment. Therefore only the facts most favorable to S.M.V. will be considered. Bonham was killed on October 9, 1976, in an automobile accident, and L.D.V. (the Child) was born out of wedlock on November 5, 1976. S.M.V. and Bonham had lived together out of wedlock for some years. A paternity proceeding was initiated by S.M.V. against Bonham's estate on October 11, 1979, but was dismissed because it had not been brought within Bonham's lifetime. No acknowledgment of paternity, written or otherwise, is shown to exist. The action for Bonham's wrongful death brought on behalf of a surviving legitimate child was settled, and S.M.V. claims a distributive share of those proceeds on behalf of her illegitimate Child.

## ISSUE

S.M.V. assigns six errors for our consideration on appeal. However, we perceive that only one question is presented as follows:

Under what circumstances is an illegitimate child a "dependent child" under the wrongful death statute, IND.CODE 34–1–1–2?

## DISCUSSION AND DECISION

■ Littlepage did not favor this court with an appellee's brief. Therefore, this court may reverse upon the showing by the appellant of prima facie error in the trial court's judgment; however, we are not compelled to do so. We may in our discretion consider the questions properly presented and decide the case on its merits. *Contech Architects and Engineers, Inc. v. Courshon,* (1979) Ind.App., 387 N.E.2d 464. We have the benefit of an able brief submitted by Amicus Curiae Allstate Insurance Company, which insured the defendant in the wrongful death action prosecuted by Littlepage. It appears to us that the briefs on file adequately enable the court to review the questions presented in the appeal.

*Constitutional considerations*

■ Numerous cases decided by the Supreme Court of the United States in recent years address the problem of statutorily imposed burdens or statutorily denied rights involving illegitimate children, and the relation of those statutes, rights and burdens to the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. In the interest of brevity, we have distilled from those cases certain general rules which we will summarize. In general, a statute may not deny an illegitimate child rights given to children generally. The rationale for the rule is that a state should not attempt to influence the actions of men and women by imposing sanctions on the children of illicit relationships. Visiting condemnation upon the head of an innocent child who is not responsible for his birth is illegal and unjust, as well as an ineffectual way of deterring parents. A state may create statutory classifications, and great respect, deference and latitude is accorded them by the courts. However, the classifications must, at a minimum, be rational and bear a reasonable relation to statutory objectives and legitimate state interests in order to satisfy

equal protection requirements. A state may not create a classification if the classification results in an "invidious discrimination" against a particular class, and if the classification unnecessarily excludes illegitimate children, it is constitutionally flawed.

However, when paternity is at issue, the resolution of potentially difficult problems of proof and the prevention of spurious claims are legitimate state interests which will be respected by the courts as valid. A legal framework may justly require a more demanding standard of proof for an illegitimate child claiming from his putative father than that required of an illegitimate child claiming from his mother, or of a legitimate child claiming from either parent. Yet, the state statutory scheme may not create an "insurmountable barrier" that works to shield otherwise invidious discrimination. The state's interest in these cases is substantial, and reasonable means adopted to insure the accurate resolution of paternity disputes and to minimize the potential for the disruption of estate administration are valid. *See Parham v. Hughes,* (1979) 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269; *Lalli v. Lalli,* (1978) 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503; *Trimble v. Gordon,* (1977) 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31; *Jimenez v. Weinberger,* (1974) 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363; *Gomez v. Perez,* (1973) 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56; *Weber v. Aetna Casualty & Surety Co.,* (1972) 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768; *Levy v. Louisiana,* (1968) 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436.

The creation of "insurmountable barriers" in statutes which render it legally impossible for an illegitimate child to gain entrance to a class violates equal protection. *Weber, supra* (Workmen's Compensation); *Gomez, supra* (enforceable right to support); *Trimble, supra* (inheritance from father). For our purposes, a closer analysis of *Lalli, supra,* one of the most recent cases, is desirable. That case involved a New York inheritance statute, which bears some similarities to our own. It provided that an illegitimate child could inherit from his father *only* if paternity had been established by a court of competent jurisdiction during the father's lifetime. The New York courts rejected the equal protection argument, and their decision was affirmed by the Supreme Court of the United States, even though the father had acknowledged paternity of the child in writing before a notary. The Court distinguished *Trimble,* an earlier case, which had held invalid an Illinois inheritance statute as a violation of equal protection; that statute had not provided any way, including paternity adjudication, by which an illegitimate child could inherit. The Court discussed the state's power to create an appropriate legal framework and procedure to address the difficult task of proof of paternity and the related danger of spurious claims. The Court stated that the New York statute, by lifting the absolute bar to paternal inheritance, tended to achieve the desired effect of softening the rigors of previous law which permitted illegitimates to inherit only from their mothers. The Court then said:

> "The single requirement at issue here is an evidentiary one—that the paternity of the father be declared in a judicial proceeding sometime before his death. The child need not have been legitimated in order to inherit from his father. Had the appellant in *Trimble* been governed by § 4–1.2, she would have been a distributee of her father's estate." (Footnote omitted.)

*Lalli, supra,* 439 U.S. at 267, 99 S.Ct. at 524. *Parham, supra,* applied the *Lalli* rationale to a wrongful death case where a father attempted to sue for the wrongful death of a child.

Two Wisconsin cases, *Krantz v. Harris,* (1968) 40 Wis.2d 709, 162 N.W.2d 628, and *In re Estate of Blumreich,* (1978) 84 Wis.2d 545, 267 N.W.2d 870, *appeal dismissed,* 439 U.S. 1061, 99 S.Ct. 822, 59 L.Ed.2d 26, are important as bearing on the constitutionality of statutory schemes in wrongful death cases respecting illegitimates. Those two cases are nearly identical to the facts in the case at bar; that is, posthumous illegitimate children claimed the right to partici-

pation in an action for wrongful death of their putative fathers. Appeal in *Blumreich* was dismissed by the United States Supreme Court because of the lack of a substantial Federal question. Wisconsin had a statutory scheme in wrongful death actions which provided in effect that if no spouse survived, then the proceeds were to be distributed to the lineal heirs of the decedent as determined by the laws of descent. Section 237.06 of the descent statute made an illegitimate child a lineal heir of his father only if (1) the father had acknowledged the child in writing, (2) paternity had been adjudicated under Wisconsin's paternity statute in the father's lifetime, *or* (3) he had admitted in open court that he was the father. The question in both cases was whether a posthumous illegitimate child could recover for the wrongful death of his putative father where none of the conditions of heirship was met. The Wisconsin Supreme Court held in both cases that the child could not recover. The *Blumreich* court rejected due process and equal protection arguments and stated that the child must bring itself within the statute. The fact that the illegitimate parents cohabited, and the deceased orally acknowledged the unborn child to acquaintances, was insufficient.

*Statutory scheme respecting illegitimates*

Resolution of the basic questions first demands an examination of statutory and case law in Indiana pertaining to the rights and treatment of illegitimate children in relation to their putative fathers. The wrongful death statute, Ind.Code 34–1–1–2, provides that the proceeds of the wrongful death recovery shall, as relevant here, "inure to the exclusive benefit of the widow or widower, as the case may be, and to the *dependent children,* if any, or dependent next of kin, *to be distributed in the same manner as the personal property of the deceased.*" (Emphasis added.) Manifest reference is thus made to the laws of intestate succession. By Ind.Code 29–1–2–5 kindred of the half blood inherit the same share as kindred of the whole blood. Under

Ind.Code 29–1–2–7(a) an illegitimate child is "treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit from his mother and from his maternal kindred, both descendants and collaterals, in all degrees, and they may inherit from him." However, for the purpose of inheritance to, through and from an illegitimate child, the illegitimate child shall be treated the same as if he were a legitimate child of his father, "... if but only if, (1) the paternity of such child has been established by law, during the father's lifetime; or (2) if the putative father marries the mother of the child *and* acknowledges the child to be his own." (Emphasis added.) Ind.Code 29–1–2–7(b). The statute further provides that the mother's testimony must be corroborated.

At all times relevant to the case at bar, Indiana's paternity statute was Ind.Code 31–4–1–1 (Acts 1941; Repealed by Acts 1978, P.L. 136, Sec. 57).[1] The purpose of the paternity statute was to provide proper legal procedures that would give children born out of wedlock the same rights to proper care, maintenance, education, protection, support and opportunities that children born in wedlock have. Ind.Code 31–4–1–1. The Act obligated the parents to provide such support, Ind.Code 31–4–1–2, and permitted the mother to bring the action. Ind.Code 31–4–1–3 and 31–4–1–9. The action could be brought during pregnancy. Ind.Code 31–4–1–15. A joint petition was available for consenting parties. Ind.Code 31–4–1–8. Agreements of support were recognized and enforceable. Ind.Code 31–4–1–6 and 31–4–1–25.

Section 31–4–1–17 of the Act provided that:

"If, after the filing of the complaint, the defendant [putative father] dies, the proceeding shall not abate but may be maintained against his personal representatives in the same respect as if he were living, subject to the provisions of sec. 7 [Ind.Code 31–4–1–7] of this act ... No judgment may be entered against such personal representatives upon the

**1.** For current law *see* Ind.Code 31–6–6.1–1 *et seq.,* effective October 1, 1979.

evidence of the mother alone. The evidence of the mother must be supported by corroborating evidence or circumstances."

Ind.Code 31–4–1–7 provides as follows:

"The obligation of the father, where his paternity has been established during his lifetime by judgment of a court of competent jurisdiction, or where his paternity has been acknowledged by him in writing, or by the part performance of his obligations, is enforceable against his estate in such an amount as the court may determine . . . Provided, That in the enforcement . . . the amount allotted to . . . any child born out of wedlock shall never be in any event greater than the amount that could have been allotted to . . . such child as its distributive share had it been born in wedlock. . . ."

The two-year statute of limitations for the enforcement of parental obligations, Ind.Code 31–4–1–26, is tolled where (1) paternity has been established by a judgment of a court of competent jurisdiction, or (2) the child has been acknowledged by the alleged father in writing, or (3) the alleged father has been furnishing support either voluntarily or pursuant to an agreement.

Though not relevant here, the new 1979 paternity act, Ind.Code 31–6–6.1–1 et seq., contains many of the same provisions, including acknowledgment in writing. The statute of limitations, Ind.Code 31–6–6.1–6, has been extended during the minority of the child, and a petition to establish paternity may be filed within a period of five months after the death of the decedent. Of further significance are certain presumptions of paternity existing where a child is born during a marriage or within 300 days after the termination thereof, or the parents marry and the father acknowledges the child, or the father receives the child into his home and holds the child out to be his biological child. Ind.Code 31–6–6.1–9.

The statutes summarized above abrogated the harsh rules of common law which held that an illegitimate child was looked upon as nulius filius, a kin to nobody, having no ancestor from whom inheritable blood could be derived. 1 Blackstone, Commentaries 459. Indiana cases have held that an illegitimate child is not a child of the father for purposes of inheritance. *Truelove v. Truelove,* (1909) 172 Ind. 441, 86 N.E. 1018; *See Hall v. Fivecoat,* (1942) 110 Ind.App. 704, 38 N.E.2d 905. The definitial section of the probate code, Ind.Code 29–1–1–3 excludes an illegitimate child from the definition of "child." "Heirs" are the persons who are entitled to receive the real and personal property of the decedent under the statute of intestate succession. "Issue" includes only "lawful lineal descendants."

The wrongful death act of 1881, as amended in 1889, contained a classification of beneficiaries similar to the one currently in effect under Ind.Code 34–1–1–2. Two Indiana cases have defined the rights of parents to file actions for the wrongful death of their illegitimate children in terms of the rights of illegitimates at common law and the statutes on intestate succession. In *McDonald v. The Pittsburgh, Cincinnati, Chicago and St. Louis R'y Co.,* (1896) 144 Ind. 459, 43 N.E. 447, the court held that a putative father could not maintain an action for the death of his acknowledged illegitimate child even though he had reared and supported the child. One reason assigned by the court for its holding was that our statutes did not confer upon the putative father the right to sue for the wrongful death of an illegitimate child. "Children" in the wrongful death statute meant legitimate children. In the case of *L.T. Dickason Coal Company v. Liddil,* (1911) 49 Ind.App. 40, 94 N.E. 411, an action was brought by the personal representative of an illegitimate child for the benefit of his next of kin, namely his mother, two half brothers and half sister, being children of his mother by a marriage subsequent to his birth. The question was whether those persons were next of kin, or whether the illegitimate child had no next of kin within the meaning of the wrongful death statute. The Supreme Court forthwith noted that although a father could not inherit from his illegitimate child under the inheritance statutes, the illegitimate child could inherit

from the mother and her descendants and collateral kindred, and they could inherit from the child. The court stated that no distinction existed between heirs at law and next of kin. The court concluded that,

"Under the statutes of our State the mother of an illegitimate child and her descendants and collateral kindred are entitled to inherit the personal property of such deceased child, and are therefore its next of kin. We recognize the rule that a statute in derogation of the common law must be strictly construed, and we regard § 285, *supra* [wrongful death act], as such a statute, but we do not think that a strict construction of this section will prevent the mother of an illegitimate child from being considered its next of kin within the meaning of this act."

*Id.* at 49, 94 N.E. 411.

*Bernacki v. Superior Construction Co.,* (1979) Ind., 388 N.E.2d 536, is a recent case concerning the claim of a posthumous illegitimate child for Workmen's Compensation death benefits on account of his deceased putative father. The acknowledgment required by the statute was not made; there was even an indication that the alleged father did not know of the pregnancy. The court, after declaring the requirement of acknowledgment constitutionally sound, stated:

"The question that we must determine is whether or not there is a rational relationship to a legitimate state purpose in those portions of the statute which classified acknowledged and unacknowledged illegitimate children differently. In our judgment, there is a very valid and clear purpose in such classification. Chief Judge Buchanan observed that 'Requiring acknowledgment decreases the problem of locating illegitimate children and determining questionable claims of parenthood. . . .'

The legitimate state purpose is even more glaring with respect to children born posthumously. It has been urged that, because of the alleged father's untimely death, he had no opportunity to acknowledge the child. We hasten to add that neither did he have an opportunity to deny it. To declare unconstitutional the acknowledgment requirement of the Act would not only create a class of recipients never contemplated by the Legislature, it would open wide the door to posthumous claims of paternity impossible of defense."

388 N.E.2d at 539.

 Any statutory scheme that completely excluded illegitimate children from participating in recoveries for the wrongful death of their putative fathers would be, under the authorities discussed above, clearly unconstitutional as violative of the equal protection clause of the Fourteenth Amendment. It is a well established rule that if an act admits of two reasonable interpretations, one that brings it within and the other without the constitution, that interpretation will be followed that will make it possible to uphold the Act. *State ex rel. Brubaker v. Pritchard,* (1956) 236 Ind. 222, 138 N.E.2d 233; *Evansville-Vanderburgh Levee Authority District v. Kamp,* (1960) 240 Ind. 659, 168 N.E.2d 208. It is, therefore, our opinion that a construction which permits an illegitimate child to participate in a wrongful death recovery is indicated.

The statutory scheme by which an illegitimate child may participate is contained in the intestate succession statutes, Ind.Code 29–1–2–7(a), and the paternity statutes, Ind.Code 31–4–1–1 *et seq.* Those statutes create Indiana policy and define the rights of illegitimate children in relation to their putative fathers. Each permits the enforcement of the rights of the child against the putative father's estate for the purpose of providing support and care to the illegitimate child, the same purpose served by the wrongful death act. In addition to creating a right, those statutes create higher evidentiary requirements for recovery than those imposed on legitimate children enforcing the right to support. These requirements reflect a legislative policy that recognizes the difficulty of proving paternity and attempts to prevent spurious claims against the estate of the deceased. Ind.Code 34–1–

1-2 incorporates in part the intestate succession statute by requiring the proceeds of a wrongful death recovery "to be distributed in the same manner as the personal property of the deceased." The intestate succession statute in turn refers to the paternity statute by requiring either the establishment of paternity during the lifetime of the father, or marriage of the parents plus acknowledgment by the father.

■ We, therefore, are of the opinion that the reasonable and proper interpretation of the legislative scheme involved here is that the term "dependent children" as used in the wrongful death act includes any illegitimate child who has the right to maintain a claim for inheritance against his father's estate under the laws of intestate succession, or to enforce parental obligations under the paternity statute against the father's estate.

■ No facts are disclosed in the evidentiary materials from the proceedings on the motion for summary judgment which would indicate that (1) paternity of the decedent had been established during his lifetime; or (2) Bonham and S.M.V. had married *and* he had acknowledged the paternity of the Child; or (3) Bonham had acknowledged the paternity of the Child in writing; or (4) that there was past performance of Bonham's obligation. Therefore, since there was no issue of material fact, the trial court did not err in granting summary judgment. We believe this holding is within the rationale of *Bernacki, supra.*

For the above reasons, this cause is affirmed.

Affirmed.

ROBERTSON, J., concurs.

RATLIFF, P.J., concurs with opinion.

RATLIFF, Presiding Judge, concurring.

I concur in the majority opinion that under the applicable Indiana statutes, the posthumously born illegitimate child was not entitled to participate in the action for wrongful death of the putative father. The majority has properly construed and applied those statutes. Further, I agree that there is no constitutional impediment which renders those statutes ineffectual. The result reached in this case, upon the facts of this case, and under pertinent Indiana law, is correct.

However, I have some concern with the majority's reference to the problems created by stale claims of paternity, the difficulty of proving paternity, and the danger of spurious claims of paternity against the estate of a deceased putative father as justification for the statutes governing the rights of illegitimates to inherit and, consequently, to participate in wrongful death actions such as the one before us. While such concerns have indeed been expressed by our courts and are relevant historically to the discussion of the issue at hand, the continued reliance upon such matters seems antiquated and of questionable vitality in view of the state of modern scientific testings, recent decisions of the Supreme Court of the United States and this court, and recent legislative enactments by our General Assembly. *See, for example, Mills v. Habluetzel*, (1982) 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (declaring a Texas one-year statute of limitations in paternity actions unconstitutional); *Matter of M.D.H.*, (1982) Ind.App., 437 N.E.2d 119 (transfer pending) (declaring former Indiana two-year statute of limitations in paternity actions unconstitutional); *Little v. Streater*, (1981) 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (due process prevents an indigent defendant in a paternity action being denied blood grouping tests because of his inability to pay). Our opinion in *Matter of M.D.H.* and Justice O'Connor's concurring opinion in *Mills* refer to scientific and legal articles concerning Human Leukocyte Antigen (HLA) tissue tests and their accuracy in establishing lack of paternity. Thus, the argument of difficulty of proof may well fall in the face of modern scientific knowledge. Our legislature has now extended the statute of limitations in paternity actions significantly. West's A.I.C. § 31-6-6.1-6 (1982-83 Supp.). The child may now file such an action at

any time before his twentieth birthday, and, if public assistance has been granted, the welfare department can file up to the fifth birthday of the child. In addition, posthumous claims have been recognized because the paternity action may be instituted within five months after the death of the alleged father. *Id.* Thus the arguments concerning stale claims and spurious claims against a deceased father unable to deny paternity lose their force when these statutes are considered.

However, since I view the majority's comments concerning former legislative policy to have been offered for historical background and the decision here does not and need not rest upon those arguments which I now question, I concur.