**Robert D. MELVIN, as personal representative of the Estate of Robert D. Melvin II, deceased, Plaintiff,**

v.

**Mark K. PATTERSON and Whitehead Specialties, Inc., Defendant.**

**No. IP 96–0625–C–B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 30, 1997.

Bill Green, Crawfordsville, IN, Kurt R. Homann, Collier Homann & Siamas, Crawfordsville, IN, Michael J. O'Reilly, Lafayette, IN, for Plaintiff.

David Sauvey, Kightlinger & Gray, Evansville, IN, for Defendant.

## ENTRY DISCUSSING GRANT OF PARTIAL SUMMARY JUDGMENT

BARKER, Chief Judge.

Plaintiff Robert D. Melvin ("Plaintiff") filed, as the personal representative of the Estate of Robert D. Melvin II, deceased, a complaint in Indiana state court on April 2, 1996 against Defendants Mark K. Patterson and Whitehead Specialties, Inc. ("Defendants"). Included in the complaint were claims under the Indiana Wrongful Death Act, Ind.Code § 34–1–1–2, that Plaintiff made on behalf of the decedent's two alleged children. On May 2, 1996, Defendants removed the action to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. section 1332.[1] The matter is presently before the Court on Defendants' motion for partial summary judgment. Defendants generally contend that Plaintiff may not maintain a claim under the Wrongful Death Act on behalf of one of the decedent's two alleged children because the child does not qualify as a "dependent child," a requisite for recovery under the Act. For the reasons that follow, the Court grants Defendants' motion.

### I. Summary judgment standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989), *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf*, 870 F.2d at 1330.

Under Rule 56, a court may also enter what is commonly referred to as a partial summary judgment. *See* 11 *Moore's Federal Practice*, § 56.40[2] (Matthew Bender 3d ed.1997). Rule 56(a) states that a claimant may seek a ruling "for a summary judgment in the party's favor on all or any part [of the claim] thereof" Fed.R.Civ.P. 56(a). Likewise, Rule 56(b) states that a party defending a case may seek a ruling "in the party's favor as to all or any part [of a claim, counterclaim, or cross-claim] thereof" Fed.R.Civ.P. 56(b). Rule 56(d) states that a court shall issue "an order specifying the facts that appear without substantial controversy ... and directing such further proceedings in the action as are just." Fed.R.Civ.P. 56(d). In making a partial summary judgment ruling, courts employ the normal standard for summary judgment under Rule 56(c). *See* 11 *Moore's Federal Practice*, § 56.40[2] (Matthew Bender 3d ed.1997).

### II. Statement of facts

The parties are in agreement as to the undisputed facts of the case. *See* Pl.'s Resp. Br., p. 1. This case arises out of an automobile accident that occurred on April 5, 1994 between a tractor trailer driven by Defendant Mark K. Patterson, while in the course of his employment with Defendant White-

---

1. Defendants allege that Plaintiff is a citizen of Indiana, that Defendant Patterson is a citizen of Illinois, that Defendant Whitehead Specialties is a business incorporated under the laws of Wisconsin, and that the amount in controversy exceeds $50,000, exclusive of interests and costs.

Since the removal of this action, Congress increased the amount in controversy required for jurisdiction under section 1332 to $75,000, effective January 17, 1997. *See* Federal Courts Improvement Act of 1996, Pub. L. 104–317, § 205. This change does not affect the instant case.

head Specialties, Inc., and a car driven by Robert D. Melvin II. Melvin died the next day as a result of injuries he sustained in the accident. At the time of his death, the decedent was unmarried and had no children. On May 12, 1994, Merialla Ann West was born. On July 16, 1994, Braxton Michael Largent was born. Plaintiff alleges that the decedent was the father of each of these children.

A verified petition to establish the paternity of Merialla West was filed on September 6, 1994, exactly five months after the decedent's death. A verified petition to establish the paternity of Braxton Largent was not filed until August 25, 1995, more than 16 months following the decedent's death. Defendants appear to acknowledge that the Circuit Court of Montgomery County, Indiana, issued an Order Establishing Paternity that found the decedent to have been the father of Braxton Largent. See Defs' Mot. Br., p. 8.[2] The parties agree that the decedent (1) never acknowledged in writing that Braxton Largent was his child, (2) never provided any monetary support during his life to the mother of Braxton Largent, and (3) never was married or engaged to be married to the mother of Braxton Largent. Neither party alleges that the decedent had a valid will at the time of his death or had named either of the two children as beneficiaries in any testamentary instrument.

### III. Discussion

The Indiana Wrongful Death Act, Ind.Code § 34–1–1–2, states in pertinent part as follows:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the cause may be, lived, against the later for an injury for the same act or omission. * * * That part of the damages which is recovered for reasonable medical, hospital, funeral and

burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

Ind.Code § 34–1–1–2 (Burns 1986). Actions for wrongful death are purely statutory in Indiana; at common law there was no claim in tort for the death of another because a personal injury action did not survive the death of the injured party. *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind.App.1994). Because wrongful death actions are purely creatures of statute, they are strictly construed. *Id.*; *Southlake Limousine & Coach, Inc. v. Brock*, 578 N.E.2d 677, 679 (Ind.App.1991). Therefore, only those damages prescribed by statute are recoverable. *Wiersma Trucking*, 643 N.E.2d at 911; *Southlake Limousine*, 578 N.E.2d at 679. In *Wiersma Trucking* the court gave the following helpful explanation of the basis for recovery under the Act:

> Pecuniary loss is the foundation of a wrongful death action, and the damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained. Pecuniary loss can be determined, in part, from the assistance that the decedent would have provided through money, services, or other material benefits. Our courts have also allowed the first class of beneficiaries under the Statute—spouses and dependent children—to recover emotional damages. For example, the decedent's spouse may recover damages for the loss of care, love and affection, the decedent's minor children may recover for loss of parental training and guidance, and the minor children may recover for the loss of their parent's care[.]

*Wiersma Trucking*, 643 N.E.2d at 911 (internal citations omitted). *Cf. Estate of Sullivan*

---

**2.** The Court does not appear to have before it a copy of the alleged order, despite Defendants' designation of the alleged order as an exhibit to the motion brief. While neither party appears to have proffered the state court's order as evidence, Defendants do not dispute its existence. Therefore, for purposes of the instant motion, the Court will assume the validity of the paternity adjudication.

**1216**

*v. United States,* 777 F.Supp. 695, 701 (N.D.Ind.1991) (characterizing damages for loss of parental care, training, and guidance as pecuniary loss).

■ In this case, Defendants contend that they are entitled to summary judgment in regard to any claim made on behalf of Braxton Michael Largent. Defendants contend that Braxton does not qualify as a "dependent child" under the meaning of the Wrongful Death Act on the grounds that Braxton's paternity was not timely established in accordance with either the Indiana Paternity Act, *see* Ind.Code § 31–6–6.1–1, or the Indiana Intestate Succession Act, *see* Ind.Code § 29–1–2–7(a). Defendants contend that because these two statutes define the rights of illegitimate children in relation to their putative fathers, the failure of Braxton's guardian to timely establish his paternity pursuant to either statute precludes the court from finding Braxton to be a "dependent child" under the Wrongful Death Act.

■ The primary authority for Defendants' position is *S.M.V. v. Littlepage,* 443 N.E.2d 103 (Ind.App.1982). In that case, an illegitimate child's mother petitioned the estate of her child's putative father for a distributive share of proceeds from the estate's wrongful death settlement. The trial court denied the mother's petition on the grounds that the mother's paternity proceeding on behalf of her child did not comport with the prerequisites for establishing paternity under either the Indiana intestacy statute or the Indiana paternity statute.[3] In affirming, the appellate court held that "the term 'dependent children' as used in the wrongful death act includes any illegitimate child who has the right to maintain a claim for inheritance

against his father's estate under the laws of intestate succession, or to enforce parental obligations under the paternity statute against the father's estate." *Id.,* at 110. In concluding that the requirements of these two statutory schemes should be applied to wrongful death claims brought on behalf of illegitimate children, the court made the following observation:

> Those statutes create Indiana policy and define the rights of illegitimate children in relation to their putative fathers. Each permits the enforcement of the rights of the child against the putative father's estate for the purpose of providing support and care to the illegitimate child, the same purpose served by the wrongful death act. In addition to creating a right, those statutes create higher evidentiary requirements for recovery than those imposed on legitimate children enforcing the fight to support. These requirements reflect a legislative policy that recognizes the difficulty of proving paternity and attempts to prevent spurious claims against the estate of the deceased. Ind.Code 34–1–1–2 [the Wrongful Death Act] incorporates in part the intestate succession statute by requiring the proceeds of a wrongful death recovery "to be distributed in the same manner as the personal property of the deceased." The intestate succession statute in turn refers to the paternity statute by requiring either the establishment of paternity during the lifetime of the father, or marriage of the parents plus acknowledgment by the father.

*Id.* at 109–10. We find the court's holding in *Littlepage* to be controlling. *See also Foster v. Filley,* 531 N.E.2d 1226, 1227 (Ind.App. 1988) (citing *Littlepage* with approval); *Holl-*

---

3. The court found that the mother had not brought the proceeding within the putative father's lifetime and that the mother had offered no evidence that the putative father had ever acknowledged himself to be the father of the child. During the relevant time in the case, the intestate succession statute, Ind.Code § 29–1–2–1 *et seq.* (Acts 1953; Amended by Acts 1987, P.L. 50, Sec. 3; Acts 1989, P.L. 261, Sec. 1), provided that an illegitimate child would be treated the same as if he or she were a legitimate child "if but only if, (1) the paternity of such child has been established by law, during the father's lifetime; or (2) if the putative father marries the mother of the

child and acknowledges the child to be his own." Ind.Code § 29–1–2–7(b). At this same time, the paternity statute, Ind.Code § 31–4–1–1 *et seq.* (Acts 1941; Repealed by Acts 1978, P.L. 136, Sec. 57), provided that "[t]he obligation of the father, where his paternity has been established during his lifetime by judgment of a court of competent jurisdiction, or where his paternity has been acknowledged by him in writing, or by the part performance of his obligations, is enforceable against his estate in such an amount as the court may determine." Ind.Code § 31–4–1–7.

*ingsworth v. Taylor,* 442 N.E.2d 1150, 1151–52 (Ind.App.1983) (same); *Estate of Sullivan v. United States,* 777 F.Supp. 695, 700 (N.D.Ind.1991) (same). As the state appellate court noted, the Wrongful Death Act specifically links a beneficiary's right to recovery under the Act with his or her right to receive a distribution of the decedent's personal property. Accordingly, where the alleged wrongful-death beneficiary is an illegitimate child, it is reasonable to refer to the State's intestate succession statute to determine whether the child should be considered one of the intended statutory beneficiaries. We therefore conclude that the holding in *Littlepage* is a correct statement of Indiana law.

Since the court decided *Littlepage,* the intestate succession statute has been amended and the paternity statute has been repealed and replaced. The intestate succession currently states that an illegitimate child may participate in the putative father's inheritance through intestate succession as if he or she were legitimate if:

(1) The paternity of the child has been established by law in a cause of action that is filed:

(A) During the father's lifetime; or

(B) Within five (5) months after the father's death; or

(2) The putative father marries the mother of the child and acknowledges the child to be his own

Ind.Code § 29–1–2–7(b). The paternity statute states:

Notwithstanding any other provision of this section, an action [to establish paternity] must be filed during the lifetime of the alleged father or within five (5) months after his death.

Ind.Code § 31–6–6.1–6(d). The undisputed evidence in this case reveals that during his lifetime the decedent never married Braxton's mother or acknowledged being the father of Braxton. The undisputed evidence further reveals that Braxton's mother did not file a petition to establish Braxton's paternity during the decedent's lifetime or within five months of the decedent's death. Based on this evidence, Plaintiff has failed to demonstrated that Braxton has a right either to inherit from the decedent's estate by intestate succession or to enforce parental obligations against the decedent's estate under the paternity statute. Accordingly, Braxton cannot be deemed a dependent child of the decedent's for purposes of the Wrongful Death Act and therefore does not have a statutory right to recover under that Act against Defendants. Because Plaintiff cannot establish an essential element of a wrongful-death claim on behalf of Braxton, Defendants are entitled to partial summary judgment on any such claim.

■ Plaintiff's arguments in opposition to partial summary judgment, while unavailing, nevertheless merit some attention. Plaintiff makes two principal arguments against Defendants' motion for partial summary judgment. First, Plaintiff contends as a substantive matter that Braxton's status as a dependent child should automatically result from the Montgomery Circuit Court's paternity adjudication. Second, as a procedural matter, Plaintiff asserts that the issue of dependency is not even properly before the Court. Turning to the first argument, Plaintiff contends that the Montgomery Circuit Court's paternity adjudication should qualify Braxton as a "dependent child" regardless of the period of time intervening between the decedent's death and the filing of the paternity petition. In support of his contention, Plaintiff cites *Lucas v. Estate of Stavos,* 609 N.E.2d 1114 (Ind.App.1993), where a court held that an illegitimate child could qualify as a dependent child for purposes of the Wrongful Death Act based on a Louisiana state court adjudication of the child's paternity, despite the fact that the Louisiana paternity petition was not filed within five months of the putative father's death. *Lucas,* however, is inapposite. The court determined that the illegitimate child's paternity was properly established because the judgment of the Louisiana court was entitled to full faith and credit under Article IV, section 1 of the U.S. Constitution. *Lucas,* 609 N.E.2d at 1119–21. As the court stated, "[The child] Lindsey's personal status is determined by the law of her domicile, Louisiana, and this rule of law is controlling here." *Id.* at 1119. Therefore, the court

continued, "Lindsey, as a resident of Louisiana at all times pertinent to this case, was not required to adhere to Indiana's five (5) month time limitation under IND. CODE § 29–1–2–7(b) or IND. CODE § 31–6–6.1–6(d) in filing her paternity action; rather, Louisiana law controlled her paternity proceedings[.]" *Id.* at 1120. Because the court found that the child's Louisiana paternity determination was entitled to full faith and credit in Indiana, the court concluded that her participation in the wrongful death action should not be barred by either Indiana's inheritance or paternity statute time limitations. *Id.* at 1122. Nevertheless, the court noted that "a different case would be presented if Lindsey had been born in Indiana and were an Indiana resident." *Id.* at 1122 n. 7. The court's holding, therefore, was that a plaintiff suing on behalf of an out-of-state child would not have to show compliance with Indiana's inheritance or paternity statute time limitations in order to pursue a claim under the Indiana Wrongful Death Act. In the instant case, Plaintiff is not suing on behalf of an out-of-state child for whom a foreign court has made a paternity determination; rather, Plaintiff alleges that a Indiana court established Braxton's paternity. Therefore, the facts of *Lucas* are distinguishable from those of the instant case. More important, the *Lucas* court directs its legal analysis to a constitutional question that is not even implicated in this case.

In a somewhat related argument, Plaintiff contends that Defendants should not be heard to challenge Braxton's status as a dependent child because they did not challenge the validity of the Montgomery County Circuit Court paternity adjudication. *See* Defs' Reply Br., p. 3. Plaintiff contends that Defendants took no steps to intervene in the paternity proceeding and therefore that Defendants' statute-of-limitations defense merges into the state court's judgment. This related argument has a number of flaws. To start with, Plaintiff erroneously assumes that

a determination of dependency is identical to an adjudication of paternity. In *S.V. v. Estate of Bellamy*, 579 N.E.2d 144 (Ind.App. 1991), the court held that an adjudication of paternity as an end in itself does not depend on a petitioner's compliance with the five-month limitations period. In *Bellamy*, a mother brought an action on behalf of her unborn child against the estate of the putative father to establish the child's paternity. The trial court dismissed the action on limitations grounds. On appeal, the court reversed and remanded. As the court stated:

In denying the paternity action, the trial court undoubtedly interpreted I.C. 29–1–2–7(b) to prohibit *all* paternity actions for *any* purpose when they are commenced more than five months after the putative father's death. The five-month limit, however, affects an action only to the extent that it seeks to establish a right of inheritance. It is not a statute of limitations applicable to paternity actions in general. If a paternity action is filed on behalf of a child after the five-month period, the child may not inherit from its father's estate even if the action is successful. However, the action may still be prosecuted and, if successful, the child may still claim other attendant benefits.

*Id.* at 148 (emphasis in original).[4] Thus, *Bellamy* recognizes that, while a paternity determination may not be timely for purposes of allowing a child to inherit under the intestacy statute, the paternity determination may nevertheless be valid for other purposes. An obvious corollary to this holding is that a determination of a child's paternity does not by itself signify that the child has a right to inherit under the intestacy statute or that the child qualifies as beneficiary under the Wrongful Death Act.

■ The second flaw in Plaintiff's argument is that, in claiming that Defendants's statute of limitations defense merges into state court judgment, Plaintiff misconstrues the doctrine of res judicata.[5] For res judica-

---

4. The *Bellamy* court noted that some such benefits might include social security survivor benefits, employee death benefits, and proceeds of life insurance policies which include the insured's "children" as beneficiaries and do not pass by

way of inheritance. *Bellamy,* 579 N.E.2d at 148 n. 6.

5. As the Seventh Circuit explained in *Waid v. Merrill Area Public Schools,* 91 F.3d 857 (7th Cir.1996), "merger" has a special meaning in the

ta to have any effect against a party, the party claiming res judicata must establish: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Andersen v. Chrysler Corp.,* 99 F.3d 846, 852 (7th Cir. 1996); *Kratville v. Runyon,* 90 F.3d 195, 197 (7th Cir.1996). In this case, Plaintiff cannot satisfy the first two requirements of res judicata. First, Plaintiff acknowledges that Defendants were not even parties to Braxton's paternity action. And as for intervention, Plaintiff presents no evidence that Defendants were even given notice of the action. Second, as the holding in *Bellamy* demonstrates, there is no identity between the cause of action to establish paternity and the cause of action to establish dependency. Consequently, Braxton's paternity adjudication does not have any preclusive effect on Defendants' challenge to Braxton's status as a dependent child.

■ We turn now to Plaintiff's procedural argument. Plaintiff contends that the issue of Braxton's paternity is not properly before the Court. This is so, Plaintiff argues, because the amount of damages which may be awarded under the Wrongful Death Act is not related to the number of a decedent's dependent children. As long as there is at least one dependent child, Plaintiff contends, then the "remainder of the damages" go to the dependent children to be distributed in the same manner as personal property. Plaintiff contends that because he is bringing the present action on behalf not only of Braxton but also of Marialla Ann West, whose status as a dependent child Defendants do not challenge, the question of Braxton's status is irrelevant to the outcome of Plaintiff's wrongful death action. Plaintiff's argument is unpersuasive. As noted above, "pecuniary loss is the foundation of a wrongful death action[.]" *Wiersma Trucking,* 643 N.E.2d at 911. However, pecuniary loss is not measured simply according to a decedent's estimated earnings over the course of his or her lifetime. Pecuniary loss is also measured by the reasonable value of what a dependent child could reasonably expect to have re-

*ceived* from the decedent during his or her lifetime. *See* Indiana Pattern Jury Instructions § 11.62 (Michie 1994). Moreover, Indiana courts have also allowed dependent children to recover damages for emotional injuries, that is, damages based on the value of the loss of parental care, training, and guidance. *See* Indiana Pattern Jury Instructions § 11.63 (Michie 1994); *Wiersma Trucking,* 643 N.E.2d at 911. It therefore is clear that the amount of damages recoverable from a defendant in a wrongful death action will vary in some degree with the number of dependent children established in the action: the greater the number of persons who depended on the decedent, the greater the aggregate amount of pecuniary or emotional loss suffered. Consequently, Defendants' allegations that Braxton is not dependent are highly germane to the resolution of the instant litigation. Indiana courts have seen fit to address the question of dependency when the issue of liability is still unresolved. *See Foster v. Filley,* 531 N.E.2d 1226 (Ind.App. 1988) (affirming trial court's determination that an unborn child was a dependent of the decedent within the meaning of the Wrongful Death Act); *Hollingsworth v. Taylor,* 442 N.E.2d 1150 (Ind.App.1983) (affirming trial court's determination that the decedent's illegitimate child was dependent within the meaning of the Wrongful Death Act).

■ As for the procedural propriety of Defendants' motion, partial summary judgment is an appropriate vehicle for determining whether a minor qualifies as a dependent child for purposes of the Wrongful Death Act. As the language of Rule 56 states, in ruling on a summary judgment motion, a court may "make an order specifying the facts that appear without substantial controversy, *including the extent to which the amount of damages or other relief is not in controversy* [.]" Fed.R.Civ.P. 56(d) (emphasis added). Moreover, in wrongful death actions, courts have entered partial summary judgment orders to rule out certain categories of damages. *See, e.g., Denham v. Burlington Northern R. Co.,* 699 F.Supp. 1253

lexicon of res judicata. " 'Merger' expresses the idea that, when a plaintiff prevails in a lawsuit arising from a particular transaction, all of the claims that the plaintiff did raise or could have raised merge into the judgment in her favor." *Id.* at 863.

(N.D.Ill.1988) (in a wrongful death action brought against a railroad whose engine was involved in a fatal collision with a pregnant motorist, the court ruled on a motion for partial summary judgment *inter alia* that only the decedent's son and not her parents or siblings could recover under the Illinois Wrongful Death Act as her beneficiaries; the Act allowed recovery to the "surviving spouse and next of kin" and Illinois courts have defined "next of kin" in accordance with the rules of descent and distribution of the Illinois probate code); *cf. Herriman v. Conrail Inc.,* 887 F.Supp. 1148 (N.D.Ind.1995) (in a suit brought under Indiana's Child Wrongful Death Act by parents of a child killed as a result of a railroad grade crossing collision, the court ruled on a motion for partial summary judgment that the parents' recovery was limited to damages for the time period ending at the time child would have reached his majority). Therefore, Plaintiff's contention that Braxton's status as a dependent child is not before the Court is without merit.

## IV. Conclusion

Based on the rule set out in *S.M.V. v. Littlepage,* 443 N.E.2d 103 (Ind.App.1982), we find that an illegitimate child's right to recover as a beneficiary under the Indiana Wrongful Death Act, Ind.Code § 34–1–1–2, for the wrongful death of the child's father depends on the child's "right to maintain a claim for inheritance against his father's estate under the laws of intestate succession, or to enforce parental obligations under the paternity statute against the father's estate." *Littlepage,* 443 N.E.2d at 110. The undisputed evidence in this case reveals that during his lifetime the decedent never married Braxton's mother or acknowledged being the father of Braxton. The undisputed evidence also reveals that Braxton's mother did not file a petition to establish Braxton's paternity during the decedent's lifetime or within five months of the decedent's death. Based on this evidence, Plaintiff has failed to demonstrated that Braxton has a right to inherit from the decedent's estate by intestate succession or to enforce parental obligations against the decedent's estate under the paternity statute.

Accordingly, Plaintiff has not met its burden of establishing an essential element of any claim on behalf of Braxton under the Wrongful Death Act, namely, that Braxton was a dependent child of the decedent. Therefore, the Court grants partial summary judgment in favor of Defendants Mark K. Patterson and Whitehead Specialties, Inc. and against Plaintiff Robert D. Melvin in regard to any wrongful death claim brought on behalf of Braxton Michael Largent.