**ESTATE OF Timothy E. SULLIVAN, et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. F90–43.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Sept. 16, 1991.

**697**

Stanley L. Rosenblatt, Norman S. Snow, Fort Wayne, Ind., for plaintiffs.

Robert N. Trgovich, Tina Nommay, Asst. U.S. Attys., Fort Wayne, Ind., Clifford D. Johnson, Assistant U.S. Atty., South Bend, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the United States' motion for summary judgment, motion to dismiss, supplemental motion to dismiss, and request for certification of questions to the Arizona Supreme Court. The parties have fully briefed the issues.

### Discussion

Plaintiff's decedent, Timothy E. Sullivan, died on September 19, 1988 in Allen County, Indiana. Allegedly, Sullivan's death was caused by the negligence of doctors employed by the Veterans Administration Medical Center in Tucson, Arizona during and following a surgical procedure in February 1985, while he was a resident of Arizona.

The government is seeking summary judgment on three issues in this case. Specifically, the government argues that the estate of Timothy E. Sullivan cannot recover under the Arizona wrongful death statute, that plaintiff cannot recover for medical expenses incurred for the pre-death treatment of Timothy Sullivan under the Arizona wrongful death statute, and that Connie J. Sullivan cannot recover for pre-death loss of consortium under the Arizona wrongful death statute.

In response to the government's arguments, plaintiff first notes that the government is assuming that this court is to apply Arizona's wrongful death statute rather than Indiana's wrongful death statute. Plaintiff next asserts that the government's assumption is incorrect and argues that even though Arizona's conflict of law rules require the application of Arizona's medical malpractice law to determine whether the surgeons who attended to Timothy Sullivan are liable for malpractice, Indiana's wrongful death statute applies to determine who is entitled to recover damages for Sullivan's alleged wrongful death.

This court, in an order dated December 19, 1990, held that Arizona law, including Arizona's conflict of law rules, governs this case. Consequently, the court held that Arizona's medical malpractice law governs this case and therefore the United States cannot invoke the Indiana Medical Malpractice Act and its $500,000.00 limit on liability. At the time of the December 19, 1990 order the parties had not raised the issue of whether Arizona's conflict of law rules would require the court to apply Arizona's wrongful death statute to plaintiff's wrongful death claim. Plaintiff now contends that Arizona's conflict of law rules require the court to use the Indiana wrongful death statute. The government agrees that the Indiana wrongful death statute applies in this case but the government argues that if the court applies Indiana's wrongful death statute, the court must also apply the Indiana Medical Malpractice liability cap, limiting plaintiff's recovery to an aggregate maximum amount of $500,000.00.

Both parties agree that the Indiana wrongful death statute applies to plaintiff's wrongful death claim. In fact, Arizona's conflict of law rules indicate that the Indiana wrongful death statute is applicable here. Arizona has adopted Restatement (Second) of Conflicts, § 175, which provides:

In an action for wrongful death, the local law of the state where the injury oc-

curred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied. This issue-by-issue approach can result in depecage, i.e., applying the law of different states to determine different issues. *In re Air Crash Near Chicago, Ill.,* 644 F.2d 594, 611 (7th Cir.1981). Plaintiff argues that as to the more procedural aspects of a wrongful death action—opening of an estate, the proper representative, who can recover, the types of injury/loss for which damages can be recovered—the law of the state where the injury [death] occurred, Indiana, controls these issues unless the government demonstrates that Arizona has a more significant relationship to these issues. The court agrees with the plaintiff's contention that the government has not made such a showing and concludes that the Indiana wrongful death statute applies to this case.

Next, the court will analyze the implications of applying the Indiana wrongful death act. First, the government's motion for summary judgment will be denied as that motion concerned the proper application of Arizona's wrongful death statute. Second, the issues the government raises in its motions to dismiss for lack of subject matter jurisdiction must be analyzed vis-a-vis the Indiana wrongful death statute.

■ The first issue the United States raises in its motion to dismiss is whether this court has subject matter jurisdiction over certain claims for recovery made on behalf of Connie J. Sullivan, Terry Sullivan and Stacy Sullivan due to their failure to meet the requirements of 28 U.S.C. § 2675(a). With respect to Terry Sullivan and Stacy Sullivan, the government asserts that Terry and Stacy have not exhausted their administrative remedies and, therefore, jurisdiction is lacking. Specifically, the government argues that the administrative claim filed in this case did not mention either Terry or Stacy and failed to set a sum certain for their injuries. The ad-

ministrative claim in this case was filed by "Connie J. Sullivan, Individually and/or Personal Representative of Estate of Timothy E. Sullivan for wrongful death purposes" and stated the amount of claim for wrongful death as $12,000,000.00.

The Federal Tort Claims Act provides at 28 U.S.C. § 2675(a) that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

Thus, a condition precedent to this court exercising subject matter jurisdiction over a suit under the FTCA is a party's exhaustion of administrative remedies which require that the party file an administrative claim with the appropriate federal agency. This administrative claim must provide a sum certain for the amount of the claim, pursuant to 28 C.F.R. § 14.2(a) which provides as follows:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, execu-

tor, administrator, parent, guardian, or other representative.

The Seventh Circuit Court of Appeals has held that Section 2675(a)'s requirement of first presenting the claim to the appropriate federal agency includes the giving of sufficient notice to enable the agency to investigate the claim and the setting of a sum certain as set forth in 28 C.F.R. § 14.-2(a). *Charlton v. United States*, 743 F.2d 557, 559 (7th Cir.1984); *Erxleben v. United States*, 668 F.2d 268, 271 (7th Cir.1981); *Best Bearings Co. v. United States*, 463 F.2d 1177, 1175 (7th Cir.1972).

Plaintiff apparently admits that the administrative claim filed in this case did not mention either Terry or Stacy and failed to set a sum certain for their individual injuries. Nevertheless, plaintiff argues that there has been compliance with jurisdictional requirements since Connie J. Sullivan individually and as personal representative of Timothy E. Sullivan's estate filed an administrative claim for wrongful death.

28 C.F.R. § 14.3(c) provides:

A claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law.

28 C.F.R. 14.4(a)(3) authorizes the government to request additional information from the personal representative:

(a) DEATH. In support of a claim based on death, the claimant may be required to submit the following evidence or information:

\* \* \* \* \* \*

(3) Full names, addresses, birth dates, kinship, and marital status of the decedent's survivors who were dependent for support upon the decedent at the time of his death.

Indiana's Wrongful Death Act, I.C. 34–1–1–2, provides:

When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. . . . That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

■ The personal representative is the only one who can prosecute an action pursuant to Indiana's wrongful death statute. *Vollmar v. Rupright*, 517 N.E.2d 1240 (Ind.App.1988); *Warrick Hospital Inc. v. Wallace*, 435 N.E.2d 263 (Ind.App.1982) *rev'd in part*, *Community Hospital v. McKnight*, 493 N.E.2d 775 (Ind.1986)[1]. The personal representative is also the only proper plaintiff. *General Motors Corp. v. Arnett*, 418 N.E.2d 546 (Ind.App.1981). Although the personal representative has authority to prosecute an action for wrongful death, the actual claimants are the statutory beneficiaries.

In this case Connie J. Sullivan is a legal representative authorized by state law to pursue claims for wrongful death on behalf of the statutory beneficiaries, i.e., the widow or widower and the dependent children, if any, or dependent next of kin.

■ A partial, rather than a total dependency, is sufficient to support recovery under Indiana's wrongful death statute. *Lustick v. Hall*, 403 N.E.2d 1128 (Ind.App.

---

**1.** In *Community Hospital v. McKnight,* the Indiana Supreme Court held that when a person pursues a claim, which involves the death of a patient, against a health care provider he is not required to first be appointed personal representative under the Wrongful Death Act because

the clear language of Indiana's Medical Malpractice Act renders such a requirement unnecessary. In this case, Indiana's Medical Malpractice Act is not applicable and thus the holding in *Warrick* requiring the appointment of a personal representative is controlling.

1980). The term "dependent children" as used in the Indiana wrongful death statute includes any legitimate child who has right to maintain a claim for inheritance against father's estate under laws of intestate succession, or to enforce parental obligations under paternity statute. *S.M.V. v. Littlepage*, 443 N.E.2d 103 (Ind.App.1982). The Indiana wrongful death statute does not place decedent's dependent next of kin, along with the widow or widower, in the first class of persons to whom the cause of action accrues in the absence of any dependent children. *Ondrey v. Shellmar Products Corp.*, 131 F.Supp. 542 (N.D.Ind. 1955).

Connie J. Sullivan, as personal representative of Timothy E. Sullivan's estate, filed an administrative claim form with the Veterans Administration. This claim form satisfies the jurisdictional requirement set out in 28 U.S.C. § 2675(a) with respect to Terry and Stacy Sullivan as the government was given sufficient written notice to commence an investigation and a value was placed on the wrongful death claim. The government, pursuant to 28 C.F.R. § 14.4(a)(3) had authority to request information concerning the decedent's survivors and could have easily identified qualified claimants. Consequently, the government's motion to dismiss Terry and Stacy Sullivan's claims for lack of subject matter jurisdiction will be denied.

■ The government next claims that this court lacks subject matter jurisdiction over any claim for recovery by Connie J. Sullivan for pre-death loss of consortium. The government asserts that Connie Sullivan was required to specify on her administrative claim form that she was claiming damages for "personal injury" and list a sum certain for the alleged personal injury. However, in appropriate wrongful death actions, loss of consortium is a valid element of damages. *DeHoyos v. John Mohr & Sons*, 629 F.Supp. 69, 73 (N.D.Ind.1984). In Indiana, where the same wrongful act which causes a loss of consortium also causes the death of the spouse, the period of time for which recovery for loss of consortium may be had is limited to the time between the commission of the injury and the date of the death of the injured spouse. *Id.; Bemis Co., Inc. v. Rubush*, 401 N.E.2d 48, 63 (Ind.App.1980). *rev'd on other grounds*, 427 N.E.2d 1058 (Ind.1981). Thus, it appears that the only "loss of consortium" claim Connie Sullivan now has is one which she may appropriately assert in this wrongful death action. As Connie Sullivan identified herself as a wrongful death claimant on the administrative claim form which she submitted to the Veterans Administration, she has fulfilled the jurisdictional requirements for bringing her claim for loss of consortium. Accordingly the government's motion to dismiss with respect to Connie Sullivan's claim for loss of consortium will be denied[2].

■ The government, by way of a supplemental motion to dismiss filed on July 9,

**2.** Prior to Timothy Sullivan's death, but after his treatment at the Veterans Administration Hospital in Arizona, Connie Sullivan and Timothy Sullivan retained legal representation for the purpose of instituting a medical malpractice claim on behalf of Timothy Sullivan and a loss of consortium claim on behalf of Connie Sullivan. However, due to alleged legal malpractice, the Sullivans' personal injury claims were not brought within the statute of limitations period.

Timothy Sullivan died on September 19, 1988 and on November 28, 1988 Connie Sullivan executed a covenant not to sue her previously retained law firm for legal malpractice and entered into a "loan agreement". As part of this agreement, Connie Sullivan accepted a $240,000 loan "in settlement of her claims including but not limited to loss of consortium." This agreement also stated that it was not to prejudice any ` prospective cause of action Connie Sullivan may

have against the VA Hospital or the individuals involved in treating Timothy Sullivan.

The government argues that Connie Sullivan recognizes that her loss of consortium claim was lost due to legal negligence, that Connie settled her loss of consortium claim, and that no further compensation can be recovered by her. In light of the above-cited case law that clearly recognizes a claim for loss of consortium in wrongful death actions, this court does not agree with the government's contention that Connie Sullivan cannot now bring a claim for loss of consortium. The court recognizes, however, that a plaintiff may not recover more than once for an injury. Thus, in the event Connie Sullivan ultimately recovers on her claim for loss of consortium it is probable that her damage award will be reduced to reflect any settlement proceeds she is permitted to retain pursuant to the "loan agreement".

1991, has requested the court to dismiss plaintiff's claim for negligent infliction of emotional distress for lack of subject matter jurisdiction and also to dismiss Lois Sullivan (decedent's mother) and Sherry Zuccolotto (decedent's sister) as parties and/or beneficiaries to this action for lack of subject matter jurisdiction. The plaintiff has not presented any arguments directed to the government's supplemental motion to dismiss and states that all issues have been responded to by them in their brief in opposition to the government's earlier motion to dismiss.

The government argues that the court lacks subject matter jurisdiction over plaintiffs' claim for negligent infliction of emotional distress contained in the complaint because the plaintiffs failed to initially present this theory for recovery in the administrative claim. Clearly, as explained above, only those claims presented initially to the appropriate administrative agency are cognizable in a tort action against the United States. *Bush v. United States,* 703 F.2d 491, 493–4 (11th Cir.1983); *Production Credit Association of Kalamazoo v. United States,* 646 F.Supp. 197 (W.D.Mich.1986). The Standard Form 95 which Connie J. Sullivan submitted to the Veterans Administration does not give the agency notice of her claim for negligent infliction of emotional distress. Furthermore, her administrative claim for wrongful death cannot be construed as encompassing her claim for negligent infliction of emotional distress. In Indiana, pecuniary loss is the foundation of a wrongful death action, and damages are limited to pecuniary loss suffered by those for whose benefit the action may be maintained. *Estate of Kuba v. Ristow Trucking Col, Inc.,* 660 F.Supp. 1069 (N.D.Ind.1986); *Magenheimer v. Dalton,* 120 Ind.App. 128, 90 N.E.2d 813 (1950). Pecuniary loss for which damages are recoverable in a wrongful death action may include loss to children of their parents' care, reasonable value of loss of care, love and affection sustained by decedent's spouse, and loss of parental training and guidance sustained by children during their minority. *Andis v. Hawkins,* 489 N.E.2d 78 (Ind.App.1986). However, a review of Indiana case law does not disclose any cases in which negligent infliction of emotional distress has been held to be a proper element of damages in a wrongful death action. Thus, the government was not on notice that anyone would be seeking damages for such a claim, since the government only had notice that a wrongful death action was being pursued. Accordingly, the government's supplemental motion to dismiss will be granted with respect to plaintiffs' claim for negligent infliction of emotional distress.

The government further argues that decedent's sister and mother failed to file an administrative claim and since they have failed to exhaust their administrative remedies under the FTCA, this court lacks subject matter jurisdiction. Although it is apparent that the decedent's sister and mother were not named on the claim form, the government nevertheless had notice that they were potential claimants since, depending on how the evidence unfolds at trial, the sister and mother could recover under the wrongful death statute as "dependent next of kin." Accordingly, the government's supplemental motion to dismiss will be denied with respect to the claims of Lois Sullivan and Sherry Zuccolotto.

The question remaining before the court is whether the Indiana Medical Malpractice Act's liability cap is applicable to this case. As noted earlier, Arizona, as part of its conflicts of law rules, has adopted the Restatement (Second) of Conflicts, § 175, which provides for an issue-by-issue approach which can result in applying the law of different states to determine different issues. As to the medical malpractice that occurred in Arizona, this court determined in its December 19, 1990 order that Arizona's medical malpractice law controls this issue. The government, however, is now asserting that the limitations on recovery in Indiana's Medical Malpractice Act apply to a wrongful death claim based on medical malpractice and that the FTCA's limited waiver of the United States' sovereign immunity incorporates

**702**

state law damage caps. The government cites several cases which purportedly have applied the Indiana malpractice cap in situations similar to the case at bar. *E.g., Warrick Hospital v. Wallace,* 435 N.E.2d 263 (Ind.App.1982) *rev'd in part, Community Hospital v. McKnight,* 493 N.E.2d 775 (Ind.1986); *Owen v. U.S.,* 935 F.2d 734 (5th Cir.1991); *Starns v. United States,* 923 F.2d 34 (4th Cir.1991); *Taylor v. United States,* 821 F.2d 1428 (9th Cir.1987); *Lucas v. United States,* 807 F.2d 414 (5th Cir. 1986); *Carter v. United States,* 768 F.Supp. 670 (N.D.Ind.1991); *Lozada v. United States,* No. CV 87-0-591 (D.Neb., Slip Op. dated May 6, 1991).

The court has read the cases the government is relying on and finds that the cases are not controlling. First, the government's cases concern the issue of whether the United States is entitled to the protection of a state's medical malpractice award limitation when the alleged malpractice occurs in a hospital in that particular state. Second, although the courts have held that the United States is entitled to the protection of the statutory cap on recovery provided in the state's medical malpractice act, the issue before the courts in these cases was whether the government was to be considered a "qualified health care provider" for purposes of the states' medical malpractice acts which limit the availability of the cap to such "qualified health care providers". The courts have uniformly held that even though the government does not contribute to a patient compensation fund or file proof of financial responsibility as a private health care provider would be required to do, the government is nevertheless entitled to the protection of the liability cap. Presently, this court is not being asked to decide whether the government is entitled to Indiana's medical malpractice liability cap in a case that is governed by Indiana's Medical Malpractice Act. Rather, the government is urging the court to apply Indiana's medical malpractice cap even though Arizona's medical malpractice laws will be applied to the issue of liability.

After carefully considering the matter, the court concludes that the correct approach is to apply Arizona's medical malpractice law as a whole and not separate medical malpractice liability and medical malpractice damage limitations (or the lack thereof). One factor supporting this conclusion is consistency: for example, it may be fairly easy to prove a medical malpractice claim in Indiana; thus, Indiana has determined that it needs a cap on medical malpractice awards. To the contrary, it may be difficult to prove a medical malpractice case in Arizona, and thus Arizona has not found a need for placing any limitations on such awards. Further, just as Indiana has little or no interest in determining the liability of medical practitioners in Arizona, Indiana has little or no interest in controlling the award of damages against the United States as a result of the negligence of government employees which took place in Arizona. Rather, Arizona has an interest in ensuring the quality of those medical practitioners employed in a Veterans Administration hospital in Arizona and is free to choose to not enact a medical malpractice liability cap as a means of protecting its interests. Consequently, the court reaffirms its earlier holding that the Indiana Medical Malpractice Act's liability cap is not applicable to this case.

Finally, the government has filed a request for certification of questions to the Arizona Supreme Court. Specifically, the government argues that Stacy Sullivan is currently receiving benefits from Social Security due to her father's death which raises the question as to whether the Arizona collateral source rule for medical malpractice actions or the Arizona collateral source rule for wrongful death actions applies in this case. In order to determine whether it is appropriate to certify this question to the Arizona Supreme Court, this court will review those Arizona decisions which discuss the purposes and applicability of the various provisions of the Arizona Medical Malpractice Act. If the answer to the question can be easily ascertained from existing case law, then the question should not be certified.

Under Arizona common law, in a wrongful death action "payments made to or benefits conferred on the injured party

from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." *Lux v. McDonnell Douglas Corp.*, 803 F.2d 304, 307 (7th Cir. 1986); *Taylor v. Southern Pacific Transportation Co.*, 130 Ariz. 516, 637 P.2d 726, 729 (1981).

The Arizona Medical Malpractice Act, A.R.S. §§ 12–561 *et seq.*, was effective February 26, 1976. Section 12–565 of the Arizona Medical Malpractice Act provides, in part, that "[i]n any medical malpractice action ... the defendant may introduce evidence of any amount or other benefit which is or will be payable as a benefit to the plaintiff as a result of the injury or death pursuant to the United States Social Security Act...."

In *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977), the Arizona Supreme Court ruled that § 12–565 does not conflict with the Arizona Constitution and stated that:

> The purpose of this rule is to inform the fact finder of the true extent of plaintiff's economic loss in order to avoid the inequity of windfall recoveries. The resulting judgments will no doubt reflect a set-off for the benefits the plaintiff has already received and these lower judgments would be reflected in lower malpractice insurance premiums, one of the objectives of the legislation.

In *James v. Phoenix General Hospital, Inc.*, 154 Ariz. 594, 744 P.2d 695, 700 (1987), the Arizona Supreme Court reviewed the legislative history of the Arizona Medical Malpractice Act and determined that:

> The Arizona Legislature, in response to a perceived crisis regarding medical malpractice liability insurance coverage, met in special session during January 1976 to enact various laws designed to ensure the availability and affordability of insurance for health care providers.... The legislative response affected primarily legal rules and insurance practices. House Bill 2001, enacted 27 February 1986, addressed a variety of concerns by providing professional liability insurance through a joint underwrit-

ing association, by establishing medical liability review panels, by prescribing legal rules governing medical malpractice actions and by other provisions as well.

The Arizona Supreme Court then ruled that the Arizona Medical Malpractice Act's statute of limitations applied to a wrongful death action when medical malpractice was alleged as the cause of the wrongful death. The Court stated that

> We agree with the statement from *Kenyon* [*v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984)] that:
>
> > "[W]e can conceive of no reason why the legislature would have intended such a remedial measure to apply to malpractice claims where there had been injury, but not death." 142 Ariz. at 72, 688 P.2d at 965. By use of the phrase, "an action for injury or *death*" to define medical malpractice, the legislature clearly identified a wrongful death action based on medical malpractice as a "cause of action for medical malpractice" under § 12–561(2).

744 P.2d at 701.

Likewise, this court can conceive of no reason why the Arizona legislature would have intended evidence of collateral source payments to be admissible in malpractice claims where there had been injury, but not to malpractice claims where there had been death. Accordingly, the court finds that it is clear that A.R.S. § 12–565 is applicable to this case and there is no need to certify the question to the Arizona Supreme Court.

### Conclusion

For the foregoing reasons, the government's motion for summary judgment is hereby DENIED; the government's motion to dismiss is hereby DENIED; the government's supplemental motion to dismiss is hereby GRANTED IN PART and DENIED IN PART; and the government's request to certify questions to the Arizona Supreme Court is hereby DENIED.