In re **GREENWOOD AIR CRASH.**

No. IP 93–9446–CV–T/F.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 7, 1995.

F. Boyd Hovde, Townsend Hovde & Montross, for Liaison Counsel for plaintiffs in No. IP93–C–9446–T/F.

Patricia McCrory, Harrison Moberly, Indianapolis, IN, for counsel for plaintiffs in No. IP94–750–C.

Steven E. Springer, Kightlinger & Gray, Indianapolis, IN, for Liaison Counsel for defendants in No. IP93–C–9446–T/F.

Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, IN, for U.S. in No. IP93–C–9446–T/F.

Richard Norris, Norris Choplin & Johnson, Indianapolis, IN, William L. Barr, Jr., Bell Boyd & Lloyd, Chicago, IL, for McKinney, Marianne Williams in No. IP93–C–1582–T/F.

Robert E. Badger, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, DC, Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, IN, for U.S. in Nos. IP93–C–1582–T/F, IP93–C–1503–T/F, IP93–C–1499–T/F, IP93–C–1453–T/F, IP93–C–1446–T/F.

Steven E. Springer, Kightlinger & Gray, J. David Hollingsworth, Hollingsworth & Meek, Indianapolis, IN, for Solar Sources Inc. in Nos. IP93–C–1582–T/F, IP93–C–1503–T/F, IP93–C–1502–T/F, IP93–C–1453–T/F, IP93–C–1453–T/F, IP93–C–1446–T/F.

Kenneth D. Ross, Ross & Harrington, Chicago, IL, for Control Systems Engineering Inc., June Bennett, Mark Doucey, in Nos. IP93–C–1582–T/F, IP93–C–1453–T/F.

Richard D. Wagner, Krieg Devault Alexander & Capehart, Indianapolis, IN, Patrick M. Graber, McCullough Campbell & Lane, Chicago, IL, for Carol L. Mullen in Nos. IP93–C–1582–T/F, IP93–C–1503–T/F, IP93–C–1502–T/F, IP93–C–1499–T/F, IP93–C–1446–T/F, IP93–C–0750–T/F.

Harry A. Wilson, Jr., Wilson Kehoe & Winingham, James T. Crouse, Speiser Krause Madole & Mendelsohn, Jackson, San Antonio, TX, for Joyce Weliever, in No. IP93–C–1503–T/F.

Kenneth D. Ross, Ross & Harrington, Chicago, IL, for Mark Doucey in No. IP93–C–1503–T/F.

Harry A. Wilson, Jr., Wilson Kehoe & Winingham, Indianapolis, IN, for Mark Doucey, Jacque Doucey, in No. IP93–C–1502–T/F.

James T. Crouse, Speiser Krause Madole & Mendelsohn, Jackson, San Antonio, TX, for Mark Doucey in No. IP93–C–1502–T/F.

Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, IN, for U.S. in No. IP93–C–1502–T/F.

Kenneth D. Ross, Ross & Harrington, Chicago, IL, for Control Systems Engineering, June Bennett, in Nos. IP93–C–1502–T/F, IP93–C–0750–T/F.

Richard M. Malad, Cohen & Malad, Indianapolis, IN, for June D. Bennett, Julie E. Bennett, in No. IP93–C–1499–T/F.

F. Boyd Hovde, Townsend Hovde & Montross, Indianapolis, IN, for Carolyn F. Welch, Michael G. Browning, in No. IP93–C–1453–T/F.

Stephen E. Arthur, Bose McKinney & Evans, Indianapolis, IN, for Control Systems Engineering Inc. in No. IP93–C–1453–T/F.

F. Boyd Hovde, Townsend Hovde & Montross, Indianapolis, IN, for Linda F. Carroll, in No. IP93–C–1446–T/F.

Stephen E. Arthur, Bose McKinney & Evans, Indianapolis, IN, Kenneth D. Ross, Ross & Harrington, Chicago, IL, for Control Systems Engineering Inc. in No. IP93–C–1446–T/F.

Patricia McCrory, Harrison Moberly, Indianapolis, IN, for State Farm Fire & Cas. Ins., Gary B. Simon, Lynn Simon, Randy G. Russ, Lori A. Russ, Jeffrey Edwards, Susan Edwards, David Ray, Vicki Ray, American States Ins., Kenneth Hall and Karen Hall.

Steven E. Springer, Kightlinger & Gray, Indianapolis, IN, for Solar Sources Inc. in No. IP93–C–0750–T/F.

Robert E. Badger, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, DC, for U.S.

## ENTRY AND ORDERS

on Solar Sources' Motion to
Compel (docket no. 71).

FOSTER, United States Magistrate Judge.

This matter is before the Court on the defendant Solar Sources, Inc.'s motion to compel plaintiff Marianne Williams McKinney, personal representative of the estate of Frank E. McKinney, Jr., deceased, to answer certain interrogatories and requests for production of certain documents. Mrs. McKinney responded to the majority of Solar Sources' requests, but objected to interrogatory nos. 3(d), 48, and 49 in Solar Sources' "First Set of Interrogatories" and request nos. 11, 13, and 14 in its "First Request for Production". In addition, Solar Sources contends that Mrs. McKinney's response to request for production no. 3 was inadequate.[1]

### 1. Interrogatory no. 3(d).

Interrogatory no. 3(d) asks Mrs. McKinney to provide:

> The names and addresses of each of decedent's spouse's employers for the past ten (10) years, a description of the services or work performed, and average weekly wage from each.

Mrs. McKinney's response was "N/A". Solar Sources thought this response was too abbreviated. In the ensuing exchange of correspondence between counsel, Mrs. McKinney explained that she interpreted the question,

> to be a general information inquiry as to whether an employee/employer relationship, within the traditional meaning of the word, existed between Mrs. McKinney and some other entity or individual. We responded appropriately since no such relationship existed. If you attempt to expand the scope of the inquiry to include Mrs. McKinney's personal finances, which are

irrelevant and 'not applicable' to the wrongful death claim, we will continue to object.

(Solar Sources' Motion, Exhibit D). In this motion, Solar Sources complains that Mrs. McKinney's response is insufficient because it fails to state whether she was engaged in any vocation or work outside the home "even if such endeavors were charitable." Solar Sources argues that, because the wrongful death statute permits Mrs. McKinney to recover for the deprivation of Mr. McKinney's love, care, and affection, information on her outside activities is relevant to "the tangible impact of her husband's death", (Solar Sources' Brief at 4), because "[t]he measure of damages between a widow who had no interests outside the home and one who was or is busily engaged in corporate and philanthropic affairs may be different", (Solar Sources' Reply at 9).

The substance of Mrs. McKinney's response to the interrogatory, as subsequently clarified through counsel's correspondence on August 18, 1994, is sufficient. First, regardless of whether information concerning Mrs. McKinney's philanthropic, corporate, or other activities outside the home is relevant, Solar Sources asked solely for information regarding her employment history. She was asked only for the names of her "employers" and the "average weekly wage" she earned from each; the interrogatory did not ask for information regarding volunteer, philanthropic, or charitable work—or any non-employee/employer work, such as services performed as an independent contractor. In the subsequent correspondence, Mrs. McKinney stated that she was not involved in a traditional employer-employee relationship during the period in question. She is entitled to rely on the plain meaning of the interrogatory. If Solar Sources wanted a comprehensive list of all of Mrs. McKinney's "outside activities", they did not ask for one. Secondly, on the merits, I find Solar Sources' asserted relationship between a wife's outside activities and the extent of her loss as a result of the deprivation of her husband's love, care,

---

1. Any interpretations made herein of Indiana's law or procedure on wrongful death actions are for the purposes of determining this discovery motion only. Controlling interpretations are, of course, made only by the district judge.

and affection too tenuous to satisfy the liberal relevancy threshold of Fed.R.Civ.P. 26(b)(1).

■ Solar Sources' motion to compel is denied to the extent that it requires Mrs. McKinney to provide a further substantive response to Interrogatory no. 3(d). However, inasmuch as interrogatories must be answered under oath and signed, Fed.R.Civ.P. 33(b)(1) and (2), the motion is granted to the extent that Mrs. McKinney is ordered to provide her counsel's August 18, 1994 supplemental answer in the proper Rule 33(b) form.

### 2. Interrogatory nos. 48 and 49.

Interrogatory no. 48 asks: "For the five (5) years preceding the death of the decedent, did you have income from any source?". Subparts request Mrs. McKinney to identify the source, amount, reason for and duration of any such income, and whether the income continued after the decedent's death. Interrogatory no. 49 requests similar information for the period after the decedent's death. Mrs. McKinney responded as follows to Interrogatory no. 48:

> See Answer to Interrogatory No. 11. Plaintiff objects for the further reason that said information is private and confidential. The discovery of which is not contemplated by Rule 26 of the Federal Rules of Civil Procedure or the Indiana Rules of Trial Practice.

Interrogatory no. 11 asked for information concerning objections to Mr. McKinney's will. Mrs. McKinney objected:

> Plaintiff objects to Interrogatory No. 11 for the reason that decedent's Will, the terms of the Will, whether an objection was made to the Will, or any other information pertaining to decedent's estate is irrelevant and immaterial and is not calculated to lead to discoverable information. The wealth, property or lack thereof of the decedent, the plaintiff or any potential beneficiary is not a relevant factor in determining pecuniary injuries compensable under the Indiana Wrongful Death Statute. A jury may not consider evidence of the wealth or property of the decedent or other potential beneficiary to determine damages resulting from the decedent's death.

Therefore, such information is not discoverable under the Federal Rules of Civil Procedure or the Indiana Rules of Trial Procedure.

Mrs. McKinney's response to Interrogatory no. 49 simply referred to her response to no. 48.

Solar Sources argues that discovery of Mrs. McKinney's income is "necessary for a complete understanding of a number of damage issues" and cites Indiana decisions in which, it contends, courts considered a surviving spouse's income in evaluating the excessiveness of a wrongful death award and in determining the amount of pecuniary loss suffered by the surviving spouse. Relying on the language of the wrongful death statute, I.C. § 34–1–1–2, and the Indiana Pattern Jury Instructions, § 11.62, which state that the measure of wrongful death damages is the amount of support furnished by the decedent or the value of benefits the beneficiaries could have reasonably expected to receive from the decedent, and analogizing to the collateral source rule barring evidence of benefits received from other sources, Mrs. McKinney argues that her own wealth or poverty as a beneficiary is irrelevant in determining damages.

■ Mrs. McKinney is correct that a spouse's wealth or poverty *per se* is irrelevant to the amount of damages recoverable under the statute. Although a couple of the opinions cited by Solar Sources do make mention of a spouse's financial condition, they do not contain explicit or implicit holdings that financial condition is a relevant factor in determining damages. The pattern jury instruction and the case law are clear that the measure of a statutory beneficiary's damages is the measure of contributions made by and reasonably expected from the decedent, regardless of the financial circumstances of the recipient. However, because damages under the statute are measured by the amount of pecuniary benefit the beneficiaries reasonably expected from the decedent had he lived, and the best evidence of such reasonable expectations are the benefits the decedent was bestowing on the beneficiaries at the time of his death, the amount of

pecuniary benefits, including income, Mrs. McKinney was receiving from Mr. McKinney around the time of his death is relevant to the amount of damages Solar Sources is potentially facing and therefore discoverable.

Solar Sources' motion to compel Mrs. McKinney's responses to Interrogatory no. 48 is granted in part. She is ordered to answer Interrogatory no. 48 only as to income received from any source associated with Mr. McKinney. Solar Sources' motion to compel answers to Interrogatory no. 49 is denied.

### 3. Request for production no. 3.

 Solar Sources requested Mr. McKinney's state and federal tax returns for the five years prior to and including the date of death and Mr. McKinney's final income tax returns. Mrs. McKinney responded: "As they apply to decedent Previously produced." This response is partially false. Apparently for two of the years in question, Mr. and Mrs. McKinney filed joint returns with the I.R.S. At the same time that the accountants prepared these joint returns, they also prepared alternative returns as if Mr. McKinney were filing separately. Mrs. McKinney produced these unfiled alternative returns in response to Solar Sources' request for the two years in question, apparently without further explanation.[2] Now, in her response to Solar Sources' motion to compel, Mrs. McKinney for the first time objects to producing the actual returns on the grounds that (1) the 'alternative' un-filed returns contain all of the pertinent information, (2) discovery of tax returns is disfavored because of their confidential nature and often prejudicial

effect, and (3) any additional information in the actual returns is irrelevant. The relevance of Mr. McKinney's tax returns is obvious: by indicating his financial condition, the returns tend to show the support he gave and could have given the statutory beneficiaries and thus the pecuniary losses the beneficiaries have suffered.[3] While I agree that Mrs. McKinney's tax returns are irrelevant to the question of her damages (for the same reasons, discussed above, that her financial condition is irrelevant), the fact that she filed jointly with Mr. McKinney, whose tax filings are relevant, does not prevent discovery of the joint returns. Mrs. McKinney may request leave to redact any information on those returns which she contends relates solely to her independent and separate financial status. Although Mrs. McKinney cites and quotes passages from cases declaring that discovery of tax returns is disfavored because of their confidential nature and their prejudicial impact, Mrs. McKinney does not assert, explain, or show how disclosure of the two returns in question would breach a confidence or prejudice her. Conclusory statements of the law and descriptions of vague potentialities are insufficient to overcome the liberal discovery ordinarily provided under the rules. The protective order already entered in this case can be enhanced, if necessary, to provide further protection for any 'confidential' information and, while the admission of the returns into evidence at trial may present a question of prejudice, disclosing the returns in discovery works no recognizable prejudice to Mrs. McKinney.

 Solar Sources' motion to compel Mrs. McKinney to produce Mr. McKinney's

---

2. I assume from the parties' presentations that Mrs. McKinney did produce Mr. McKinney's actual tax returns for the other years requested. If she did not, she must consider this Entry as an order for her to do so.

3. Solar Sources also argues that the returns are relevant and necessary to determining the tax consequences of Mr. McKinney's projected future income while Mrs. McKinney counters that, under Indiana law, a jury may not consider the tax consequences of its verdict, I.C. § 34-4-35-1. For the purposes of this motion, I agree with Solar Sources' reading that, because beneficiaries' pecuniary losses, and thus their damages, if any, are based on the decedent's after-tax income, evidence may be admitted on the likely tax consequences of the decedent's projected future earnings. Because a decedent's most recent tax profile would obviously be helpful in projecting his potential future tax consequences, recent tax returns would be relevant to the issue of damages and thus discoverable.

I note that while Solar Sources cited two decisions of this Court supposedly on-point in its favor, (Solar Sources' Reply at 8-9 and n. 3), it failed to attach copies of those decisions. I direct counsel's attention to the Court's local rule, S.D.Ind.LR 7.1(b): "If a party relies upon a legal decision not published ... then the party shall furnish the Court and all counsel of record with a copy of the relied-upon decision...."

tax returns in response to its request no. 3 is granted. Mrs. McKinney may seek leave to redact information prior to disclosure by filing a motion to that effect, attaching unredacted and redacted copies for *in camera* inspection, and including a non-conclusory, specific showing of why the information is irrelevant or otherwise should not be disclosed.[4]

### 4. Request for production no. 11.

Solar Sources' eleventh request for production asks Mrs. McKinney to produce "[a]ny and all federal and state tax returns filed by decedent's children. . . ." In subsequent correspondence between counsel, the request was narrowed to include only the two minor children Mrs. McKinney contends were dependent on the decedent's support. (Solar Sources' Brief, Exhibit C). Solar Sources asserts that this information is relevant to the "question and degree of dependency" of these two potential beneficiaries. Mrs. McKinney's objections are, first, that, as non-parties, the children are not subject to Rule 34 requests for production and she "does not have the means to compel the children to disclose their private financial material", (Mrs. McKinney's Response at 6), and second, that the children's financial information is irrelevant because, being minors, they are presumed dependent as a matter of law.[5]

■■■■ Requests for production under Fed.R.Civ.P. 34 may be served only on other parties, not non-parties.[6] Because only the personal representative of a decedent may assert a wrongful death action under the statute, I.C. § 34–1–1–2; *Rogers v. Grunden*, 589 N.E.2d 248, 258 (Ind.App. 5th Dist.1992); *Warrick Hospital v. Wallace*, 435 N.E.2d 263, 266 (Ind.App. 1st Dist.1982); *General Motors Corporation v. Arnett*, 418 N.E.2d 546, 548 (Ind.App. 2nd Dist.1981), neither of the minor children could have been named as parties in this action. It has been observed, however, that "although the personal representative has authority to prosecute an action for wrongful death, the actual claimants are the statutory beneficiaries", *Estate of Sullivan v. United States*, 777 F.Supp. 695, 699 (N.D.Ind.1991), and who qualifies as a "party" under Rule 34 has occasionally been liberally construed to meet the practical realities of a case, *see* 8A Wright, Miller, and Marcus, *Federal Practice and Procedure: Civil 2nd* § 2208, pp. 389–91 (1994). The initial question, therefore, is whether the two minor children, being real claimants in interest, qualify as "parties" under Rule 34 and whether a Rule 34 request directed to Mrs. McKinney is sufficient to reach documents in their possession, custody, or control.

■■■■ According to Solar Sources (and not disputed by Mrs. McKinney), there are no reported cases in Indiana addressing the relationship between personal representatives and beneficiaries as far as the authority, power, and responsibility each has over the litigation of a wrongful death action. In her responses to Solar Sources' requests for admission, however, Mrs. McKinney unequivocally declares that she is acting in effect as the agent for Mr. McKinney's two minor children in this suit. Responding to requests to admit that each of three attorneys does not represent the two minor children, Mrs. McKinney declared, in part:

> [The three attorneys] have been retained and have appeared on behalf of the personal representative. The dependent children . . . are not parties to the present litigation and have not retained, [the three attorneys] to represent them on a personal basis. The personal representative is herself acting in a representative capacity on behalf of the dependent children and legal

---

4. If 'confidential' or irrelevant information on the return is inextricably combined with relevant information concerning Mr. McKinney's financial status, it will likely be ordered produced.

5. The two minors in question are Mr. McKinney's children from a previous marriage. The plaintiff Mrs. McKinney did not, and does not, have custody of the two children.

6. Solar Sources is simply misinterpreting Rule 34(c) by asserting that it "now specifically permit[s] serving requests for production of documents to persons not a party to a suit." (Solar Sources' Reply at 6). Subdivision (c) simply declares that production of documents from non-parties may be obtained only through the subpoena procedure of Rule 45. I assume that no subpoenas have been served on the minor children.

counsel are acting on her behalf in the present litigation.

(Solar Sources' Supplemental Reply at 2). By acting in a "representative capacity on behalf of the dependent children", I find that Mrs. McKinney asserts claims on behalf of the minor children and acts as their agent in all discovery matters in this suit. Such an agency relationship is close enough both to qualify the children as "parties" within the meaning of Rule 34(a) and to permit requests for production served on Mrs. McKinney as their agent to be effective against the children. Personal representatives and beneficiaries, therefore, have mutual obligations to facilitate discovery. At a minimum, this means that personal representatives have a responsibility to communicate defendants' requests for production to the appropriate claimants and those claimants have an obligation to respond with production or objection. Should beneficiary claimants obstruct discovery, the procedures and sanctions provided under Rule 37 are available to enforce the orders and rules of the Court.[7]

■■■■ Regarding Mrs. McKinney's substantive objection that the tax returns are irrelevant because minor children are presumed dependent as a matter of law, I find that the law is against her. Unlike surviving spouses, a decedent's children must be dependent on the decedent's support in order to qualify as beneficiaries under the statute. I.C. 34-1-1-2 ("The remainder of the damages [after recovery of medical, hospital, funeral, and burial expenses], if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or wid-

ower, as the case may be, and to the *dependent* children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased") (emphasis added). The two elements of dependency are well-established in the cases: "... proof of dependency must show a need or necessity for support on the part of the person alleged to be a dependent ... coupled with the contribution to such support by the deceased." *New York Central Railroad Co. v. Johnson,* 234 Ind. 457, 465, 127 N.E.2d 603, 607 (1955). *Cunningham v. Werntz,* 303 F.2d 612, 614 (7th Cir.1962); *Lustick v. Hall,* 403 N.E.2d 1128, 1131 (Ind.App. 3rd Dist. 1980). Mrs. McKinney argues that this standard is inapplicable to the minor children at issue in this case because they are "dependent children as a matter of law by virtue of Decedent's legal obligation to provide them with substantial support and in fact providing that support." (Mrs. McKinney's Response at 7).[8]

■■■ While a legal obligation of support need not be shown in order to establish dependency under the Act, *Johnson,* 234 Ind. at 464, 127 N.E.2d at 606–07; *Novak v. Chicago & Calumet District Transit Co.,* 235 Ind. 489, 494, 135 N.E.2d 1, 3 (Ind.1956), I have found no Indiana precedent holding that a legal obligation of support is sufficient alone to establish dependency. Solar Sources obviously contends that the minor children may have had sufficient independent wealth or sources of income, above and beyond whatever periodic support they received or were entitled to receive from the decedent, to remove them from the "need" or "necessitous want" prong of the two-part de-

7. This ruling disposes of Mrs. McKinney's objection that "she does not have the means to compel the children to disclose their private financial material." (Mrs. McKinney's Response at 6). While I have construed this declaration as an implicit assertion that she does not have the returns to produce, I note for clarification that if Mrs. McKinney in fact has "possession, custody, or control" of any of the returns identified in the request, regardless of who owns the documents or how they came under her possession, custody, or control, Rule 34 requires that she produce them to Solar Sources.

8. The sources of Mr. McKinney's legal obligation to support his two minor children is asserted to be: (1) a general obligation under I.C. § 31-1-

11.5–12, which provides standards for awards of child support; and (2) a specific obligation pursuant to the terms of Mr. McKinney's property settlement with his previous wife which required Mr. McKinney to make various payments for the benefit of the children.

Whether the children meet the definition of dependency as defined in the statute governing the provision of group insurance by local unit public employers for their public safety employees, I.C. § 5–10–8–2.2, (*id.* at 7–8), is irrelevant. Obviously, the dependency of wrongful death claimants will be governed by the provisions of the wrongful death statute and not a separate and independent statute governing public employers' group insurance plans.

pendency standard under the statute. The only Indiana precedent cited by Mrs. McKinney in support of a presumption of dependency based on legal support obligations is a passage from *Estate of Sullivan v. United States*, 777 F.Supp. 695 (N.D.Ind.1991):

> The term "dependent children" as used in the Indiana wrongful death statute includes any legitimate child who has right to maintain a claim for inheritance against father's estate under laws of intestate succession, or to enforce parental obligations under paternity statute.

*Id.* at 700. But *Sullivan* cites *S.M.V. v. Littlepage*, 443 N.E.2d 103 (Ind.App. 1st Dist.1982), *trans. denied*, for this proposition, a decision which addressed only whether the term "children" in the statute included illegitimate children; the definition of dependency under the statute was not addressed.[9] Likewise, *Sullivan* itself was not concerned with the definition of dependency.

 Mrs. McKinney also cites a decision from another jurisdiction which she contends supports a legal presumption that minor children are dependent on decedents. *Millman v. County of Butler*, 244 Neb. 125, 504 N.W.2d 820 (Neb.1993). Although not cited by Mrs. McKinney or Solar Sources, a body of Indiana law recognizes a similar presumption. *See Davis v. United States National Bank of Indiana Harbor at East Chicago*, 98 Ind.App. 580, 586, 186 N.E. 339, 340 (Ind.App.1933); *Korrady v. Lake Shore & Michigan Southern Railway Co.*, 131 Ind. 261, 262–63, 29 N.E. 1069, 1070 (Ind.1892); *Louisville, New Albany & Chicago Railway Co. v. Buck*, 116 Ind. 566, 568–69, 19 N.E. 453, 454 (Ind.1889). *See also Culbertson v. Haynes*, 127 F.Supp. 837, 841 (N.D.Ind. 1955); 10 *Indiana Law Encyclopedia*, "Death, Dead Bodies", § 12 p. 14, § 34 p. 42 (1983). However, a careful examination of the Indiana (and Nebraska) caselaw reveals that the presumption addressed is neither a conclusive presumption nor a presumption of dependency; rather, it is a rebuttable legal implication or presumption of pecuniary loss which excuses specific pleading or proof of actual pecuniary loss suffered by spouses and minor children as beneficiaries on account of the decedent's death. Once a plaintiff shows certain fundamental facts—*e.g.*, a parental or spousal relationship between the decedent and the beneficiaries in question, the decedent's previous support of the beneficiaries, and the decedent's possession of the means to provide continued support—the law implies or presumes that the decedent's spouse and minor children have suffered substantial pecuniary loss.[10] The presumption is based on the legal obligations of decedents to support their minor children and spouses and the presumption that they had been fulfilling

---

**9.** The *Sullivan* court misstated the ruling in *Littlepage*. *Littlepage* held that "the term 'dependent children' as used in the wrongful death act includes any *il*legitimate child who has the right to maintain a claim for inheritance against his father's estate under the laws of intestate succession, or to enforce parental obligations under the paternity statute against the father's estate." *Littlepage*, 443 N.E.2d at 110 (emphasis added). The correct language illustrates the court's focus in that case and the extent of its ruling.

**10.** For the appellant it is insisted that the general averment that the widow and child of the decedent had sustained damages in a specified sum was not sufficient, but that the pecuniary loss, either present or prospective, resulting to them from the intestate's death should have been specially pleaded.

 &ast; &ast; &ast; &ast; &ast; &ast;

 ... it is sufficient to say it appears in the complaint in the present case that the decedent was, at the time of his death, in the employ of the railroad company as a brakeman, and that he left a widow and one child four years old. It is an unavoidable inference, therefore, that he was in the vigor of manhood, and that he was at the time engaged in earning money for the support of his wife and child....

 &ast; &ast; &ast; &ast; &ast; &ast;

 While there is some discord in the decision of courts in respect to the right to maintain the action, even for nominal damages, without averring and proving actual pecuniary loss by those for whose benefit the suit is brought, there can be no doubt that, within the rule generally prevailing, the law will imply substantial pecuniary loss in some amount to the wife and child from the death of one who sustained the relation of husband and father to them, and who was at the time presumably receiving wages, and who was therefore possessed of the ability to discharge his obligation to support those dependent upon him....

 &ast; &ast; &ast; &ast; &ast; &ast;

 ... When the relation of the party whose death has been caused, to those for whose benefit the suit is being prosecuted, has been shown, and his obligation, disposition, and ability to earn wages or conduct business, and to care for, support, advise, and protect those dependent

their obligations and would have continued to do so. See cases cited in note 10; *Pittsburg, Cincinnati, Chicago & St. Louis Railway Co. v. Reed,* 44 Ind.App. 635, 642–43, 88 N.E. 1080, 1083 (Ind.App. 1st Div.1909). Being only a rule of the *sufficiency* of the complaint and the proof, the presumption is not conclusive, as Mrs. McKinney contends, but is subject to rebuttal. *Korrady,* 131 Ind. at 263, 29 N.E. at 1070.[11] More to the point, however, because it concerns only the overall pecuniary loss suffered, the presumption does not address the issue of the minor children's dependence on the decedent, a statutory requirement which postdates most of the relevant caselaw. The question of a beneficiary's dependence under the statute is a separate from the question of how much pecuniary loss he has suffered, *Davis,* 98 Ind.App. at 586, 186 N.E. at 341.[12] A beneficiary—*viz.,* adult children and next of kin—may suffer provable substantial pecuniary loss due to the death of the decedent, but unless they were dependent on him, according to the two-part test discussed above, they may not recover under the statute. I.C. § 34–1–1–2. Even if Indiana courts were to recognize a presumption of dependence similar to the

presumption of loss, it would not prevent the discovery requested here because the presumption would be rebuttable.

The law of Indiana is clear that personal representatives of decedents have the burden of establishing the dependence of non-spousal beneficiaries and there is no law in Indiana, of which I have been advised, that excepts minor children. This Court is restricted to applying Indiana's substantive law as defined by its courts. This is not an instance of an ambiguity, contradiction, or gap in Indiana's law which must be resolved through prediction of Indiana courts' approach. Instead, Mrs. McKinney asks this Court to establish a new conclusive presumption of dependence, but if such a presumption is to be recognized, it is the function of the Indiana courts to do so. I note a relatively recent Indiana decision in which a unanimous Supreme Court examined the factual circumstances in the case at bar to determine whether the lower courts correctly decided that minor children were dependent on their divorced mother who was under legal obligation to make support payments. *Wilson v. Redinbo,* 519 N.E.2d 568, 569 (Ind.1988). Although it had the opportunity to do so, the

upon him, the matter is then to be submitted to the judgment and sense of the justice of the jury....

*Buck,* 116 Ind. at 567–69, 19 N.E. at 454.

Where a complaint charges a railroad company with wrongfully killing a person, shows that the person so killed was free from contributory fault, and that he left a widow and infant children surviving him, a cause of action is stated, although it is not directly alleged that the surviving kinfolks sustained actual damages. The legal presumption is that infant children are entitled to the benefit of the father's services, and that the wife is entitled to the benefit of the services and assistance of her husband, and that such services are of value to her. * * * [W]here the intestate leaves a widow and infant children, the implication of law is that they sustained some injury which the wrong-doer must compensate in damages.

*Korrady,* 131 Ind. at 262–63, 29 N.E. at 1070. "Where the relation of the party whose death has been caused to those for whose benefit the suit is being prosecuted has been shown, and his obligation, disposition, and his ability to earn wages, and care for, support, advise, and protect those dependent upon him, the matter is then submitted to the judgment and sense of the jury...." *Railway Co. v. Burton,* 139 Ind. 357–378, 37 N.E. 150, and 38 N.E. 594, and cases there cited.

*Malott v. Shimer,* 153 Ind. 35, 42, 54 N.E. 101, 104 (Ind.1899) (although this case was decided under Illinois' wrongful death statute, it quoted Indiana law and has been often cited for the Indiana rule).

11. "This presumption may, possibly, not extend so far as to entitle a plaintiff to recover actual or substantial damages without evidence, but it does prevail to save a complaint from overthrow where, as here, its averments are confessed by demurrer. The amount of damages that may be recovered depends, to be sure, upon the evidence, but where the intestate leaves a widow and infant children, the implication of law is that they sustained some injury which the wrongdoer must compensate in damages. It has long been the rule that if a complaint shows that the plaintiff is entitled to some damages, or to some relief, although not so much or so great as that demanded, it will repel a demurrer." *Korrady,* 131 Ind. at 263, 29 N.E. at 1070.

12. "Without entering into a discussion of the various elements of damage that may enter into and make up the pecuniary loss properly assessable by the jury in the instant case, to the widow and children of the decedent, it is sufficient to say that dependency is by no means the only element." *Davis,* 98 Ind.App. at 586, 186 N.E. at 341.

Court made no mention of a presumption of dependency or a conclusive effect of a support obligation.

I therefore find that (1) Mrs. McKinney is required to establish the actual dependency of the decedent's two minor children, (2) such dependency is not conclusively or presumptively established by Mr. McKinney's legal support obligations, (3) the childrens' tax returns are relevant evidence of their dependency, and (4) the minor children are parties within the meaning of Rule 34 and may be reached through requests for production served on Mrs. McKinney. Therefore, Solar Sources' motion to compel the production of the minor children's tax returns is granted.

**5. Requests for production nos. 13 and 14.**

These requests ask for production of any and all trust agreements from which Mrs. McKinney or the minor children derived income. Such agreements are certainly relevant to the question of the minor children's dependence on the decedent. For the reasons given above, therefore, Solar Sources' motion is granted with respect to the minor children and denied with respect to Mrs. McKinney.

All of which is SO ORDERED.